LISA, S.A., a Panamanian Corporation, Plaintiff Below, Appellant,

v.

Juan Jose Gutierrez MAYORGA, Campero USA Corp., a Delaware Corporation, Campero, Inc., a Delaware Corporation, Campero International, S.A., a Panamanian Corporation, Campero International, Ltd., a Barbados Corporation, Defendants Below, Appellees.

No. 410, 2009.

Supreme Court of Delaware.

Submitted: Feb. 24, 2010.
Decided: April 20, 2010.

Peter B. Ladig and Stephen B. Brauerman, Esquires, of Bayard, P.A., Wilmington, DE; of Counsel: Bruce W. Sanford, Mark A. Cymrot (argued) and Ronald F. Wick, Esquires, of Baker & Hostetler, LLP, Washington, DC, for appellant.

Arthur L. Dent (argued) and Brian C. Ralston, Esquires, of Potter Anderson & Corroon, LLP, Wilmington, DE; of Counsel: Edward H. Davis, Jr., Edward M. Mullins and Annette C. Escobar, Esquires, of Astigarraga Davis Mullins & Grossman, Miami, FL, for appellees.

Before HOLLAND, JACOBS and RIDGELY, Justices.

JACOBS, Justice:

Lisa, S.A. ("Lisa"), the plaintiff below, appeals from a Court of Chancery order dismissing Lisa's complaint on grounds of *forum non conveniens* and lack of personal jurisdiction. The complaint, which was filed in 2006, related to a 1992 sale of shares in a group of family-owned corporations incorporated in Guatemala and El Salvador. That 1992 sale of shares, in turn, was the subject of a prior action brought by Lisa in Florida in 1998 against affiliates of the defendants in this action. We conclude, on *forum non conveniens*

grounds, that the Court of Chancery properly dismissed the complaint, and therefore, affirm.

### FACTUAL AND PROCEDURAL BACKGROUND [1]

*A. The Parties*

The plaintiff, Lisa, is a Panamanian corporation.

Defendant Campero International, S.A. ("Campero Panama") is a Panamanian corporation that franchised the Pollo Campero chain of restaurants in the United States from 2001 to 2003. Defendant Campero International, Ltd., incorporated in Barbados ("Campero Barbados"), is a wholly owned subsidiary of Campero Panama. Defendant Campero, Inc., a Delaware corporation ("Campero Delaware"), is a wholly owned subsidiary of Campero Barbados. Defendant Campero USA Corp., a Delaware corporation ("Campero USA"), is a wholly owned subsidiary of Campero Delaware, and the franchisor of the Pollo Campero restaurants in the United States.

Defendant Juan Jose Gutierrez Mayorga ("Mayorga") is an officer and/or director of all the aforementioned defendant corporations. Mayorga is also the president of Pollo Campero, S.A. ("Pollo Campero Guatemala"), a Guatemalan corporation that originated the Pollo Campero chicken restaurant concept.

*B. The Campero Group*

The Campero Group is a chicken production and retail venture that, through various entities, operates a chain of fast food restaurants. During the period relevant to this case, the Campero Group consisted of several foreign corporations:

1. The facts, which are summarized from the Court of Chancery opinion, are drawn from the plaintiff's Amended Complaint. *See Lisa,* *S.A. v. Mayorga,* 2009 WL 1846308 (Del.Ch. Jun. 22, 2009).

Pollo Campero Guatemala owned the Pollo Campero name and recipes, and operated the Pollo Campero restaurants in Guatemala. Avicola Salvadoreña, S.A. de CV was an El Salvador corporation that operated poultry production facilities in El Salvador. And, Pollo Campero de El Salvador, S.A. de CV, was an El Salvador corporation that operated the Pollo Campero restaurants in El Salvador.[2]

Before 1992, the owners of the Campero Group were four corporations, of which three represented different branches of the Gutierrez family: (1) the Gutierrez Strauss family, (2) the Bosch Gutierrez family, and (3) the Gutierrez Mayorga family.[3] The fourth corporation was owned in equal shares by the Gutierrez Family corporations and by executives of the Campero Group who owned shares through a profit sharing plan.

Since 1982, the daily operations of the Campero Group have been controlled by Mayorga, Juan Luis Bosch ("Bosch"), and Dionisio Gutierrez Mayorga ("Dionisio"). Mayorga has served as the chief executive officer of the Campero Group at all relevant times. Between 1987 and 1991, Bosch and Dionisio (acting on behalf of Mayorga) provided Lisa with financial information showing the purported net profits of the Campero Group and other companies jointly owned by the three branches of the Gutierrez family. In its complaint, Lisa alleges that the information furnished by Bosch and Dionisio, materially understated the actual net profits of the Campero Group.

## C. The 1992 Stock Sale

In November 1992, Lisa sold its interest in the Campero Group to the Gutierrez Mayorga and Bosch Gutierrez Families for $20.25 million. Lisa claims that during the sale negotiations, Bosch and Dionisio (acting on behalf of Mayorga) repeatedly misstated financial information relating to the Campero Group.

Five years later, in December 1997, Lisa obtained copies of Campero Group financial statements, and discovered that those statements were substantially inconsistent with those furnished to Lisa before the 1992 sale of its interest in the Campero Group. In 1998, Lisa learned of a series of allegedly fraudulent transactions that occurred at the direction of Bosch and Dionisio. Those transactions allegedly falsified Campero Group's financial statements, including the net profit representations that had formed the basis of the negotiations over the 1992 purchase price of Lisa's Campero Group shares.

## D. The Florida Actions

In November 1998, Lisa filed an action in the Florida Circuit Court ("the 1998 Florida Action") against multiple defendants: Bosch, Dionisio, Pollo Campero Guatemala, the remaining corporations comprising the Campero Group, and the corporations representing the interests of the Bosch Gutierrez and the Gutierrez Mayorga families. Lisa sought rescission of the sale of its interest in the Campero Group, and money damages.

In February 1999, Lisa filed a second action in the Florida Circuit Court ("the 1999 Florida Action"), against Bosch, Dionisio, Mayorga, other individuals, and several other corporate entities. Lisa claimed that the defendants had defrauded it in connection with Avicola Villalobos S.A

---

**2.** The Campero Group also included three El Salvador corporations that are affiliates of Avicola.

**3.** Lisa represents the Gutierrez Strauss branch of the family.

("Villalobos"), a chicken production operation in which Lisa remains a shareholder.

In July 2002, Lisa filed a third action in the United States District Court for the Southern District of Florida ("the Federal Action") against Dionisio, Mayorga, Bosch, other individuals, the corporations comprising the Campero Group, and other corporations. Lisa alleged that the defendants in the Federal Action had engaged in racketeering activity relating to the operation of Villalobos.

During this period, Lisa also commenced various related actions in Guatemala.[4]

Ultimately, the 1999 Florida Action and the Federal Action were dismissed on *forum non conveniens* grounds.[5] The 1998 Florida Action was dismissed on different grounds. These three dismissals were affirmed on appeal by the Florida State courts and the Eleventh Circuit, respectively.[6]

### E. Procedural History of This Action

On November 22, 2006, Lisa filed this action in the Court of Chancery. Lisa claims that after it commenced its 1998 Florida Action, Mayorga and other members of the Gutierrez Mayorga and Bosch Gutierrez families, fraudulently reorganized the Campero Group specifically to eliminate or diminish Lisa's ability to obtain relief in the 1998 Florida Action— namely, to recover damages or be reinstated as a stockholder of the Campero Group. Lisa claims that the defendants caused the Campero Group to transfer the U.S. rights to the Pollo Campero franchise to Campero USA (through Campero Panama and Campero Delaware) for no consideration,

all as part of a continuing scheme and conspiracy to defraud Lisa.

As amended, the Delaware complaint asserted five claims. Count I alleged that the defendants conspired to defraud Lisa. Count II alleged that the defendants were unjustly enriched by the fraudulent reorganization of the Campero Group. Count III alleged that Mayorga breached his fiduciary duty owed to Lisa as a shareholder of the Campero Group. Count IV sought an order sequestering the capital stock of Campero Delaware and Campero USA (the "Delaware corporate defendants") to compel the appearance of Campero Barbados and Campero Panama, or satisfy any judgment awarded to Lisa. Count V sought injunctive relief enjoining the sale or transfer of any assets of the Delaware defendants, or interests therein, until any judgment Lisa obtained against the defendants was satisfied.

The defendants moved to dismiss the Chancery action on various grounds, including *forum non conveniens* and lack of personal jurisdiction. On October 29, 2007, the Court of Chancery stayed the Delaware action in favor of the then-pending first-filed 1998 Florida Action, and held the motion to dismiss in abeyance pending the outcome of Lisa's appeal in that Florida action.

The dismissal of the 1998 Florida Action was affirmed by the Florida Third District Court of Appeal. Thereafter, the Court of Chancery dismissed all claims against the defendants on June 22, 2009. The Vice Chancellor held that Delaware courts had no personal jurisdiction over any defendants other than the Delaware corporate

---

**4.** *See Lisa, S.A. v. Gutierrez,* 992 So.2d 413, 414 n. 1 (Fla.Dist.Ct.App.2008).

**5.** *Lisa, S.A. v. Gutierrez Mayorga,* 441 F.Supp.2d 1233 (S.D.Fla.2006) (dismissing the Federal Action).

**6.** *Lisa, S.A. v. Gutierrez Mayorga,* 240 F.App'x 822 (11th Cir.2007) (affirming dismissal of the Federal Action).

defendants. The trial court dismissed the defendants over which it lacked jurisdiction, and denied Lisa's request for jurisdictional discovery.[7] As for the Delaware corporate defendants, the Vice Chancellor dismissed Counts III and V of the complaint for failure to state a claim upon which relief can be granted, and dismissed the remaining Counts (conspiracy to defraud and unjust enrichment) on *forum non conveniens* grounds.[8] This appeal followed.

## ANALYSIS

We first address Lisa's claim that the Court of Chancery erroneously dismissed Lisa's fraud and unjust enrichment counts against the Delaware corporate defendants. Lisa argues that the Vice Chancellor misapplied the *forum non conveniens* standard, under which (Lisa says) the defendants were required to establish that they would be subjected to "overwhelming hardship" if forced to litigate in Delaware.[9] Lisa argues that although the Court of Chancery purported to apply the "overwhelming hardship" test, in fact it merely balanced the hardship to the defendants from being required to litigate in Delaware against the hardship to Lisa from having to litigate in the defendants' proposed forum—Guatemala.[10] Lisa contends that the legal standard, properly applied, required the Court of Chancery to determine whether the defendants made "a strong showing that the burden of litigating in this forum is so severe as to result in manifest hardship" to them.[11] The trial court did not do that,

7. *Lisa, S.A. v. Mayorga,* 2009 WL 1846308, at *5 n. 19 ("[Lisa's] allegations of personal jurisdiction over the nonresident defendants [are] entirely frivolous, and the court will allow [Lisa] to waste no more time by pursuing needless jurisdictional discovery in a quixotic attempt to prove otherwise."). The Court of Chancery then dismissed Count IV of the complaint, which was merely "a means to ensure the appearance of the nonresident defendants." *Id.* at *7.

8. *Id.* at *7–10. Lisa does not appeal the dismissal of Counts III and V with respect to the Delaware defendants.

9. *Berger v. Intelident Solutions, Inc.,* 906 A.2d 134, 135 (Del.2006).

10. In determining whether the *forum non conveniens* doctrine should be applied, a court must consider six factors, adopted in *General Foods Corp. v. Cryo–Maid, Inc.,* 198 A.2d 681, 684 (Del.1964) (as supplemented by *Parvin v. Kaufmann,* 236 A.2d 425, 427 (Del. 1967)). Those factors are: (1) the relative ease of access to proof; (2) the availability of compulsory process for witnesses; (3) the possibility of the view of the premises, if appropriate; (4) whether or not the controversy is dependent upon the application of Delaware law; (5) the pendency or nonpendency of a similar action or actions in another jurisdiction; and (6) all other practical problems that would make the trial of the case easy, expeditious and inexpensive. The Court of Chancery concluded that "[w]eighing all of [the *Cryo–Maid*] factors, most of which militate strongly for the defendants' position, against the somewhat attenuated interest of a foreign plaintiff in obtaining a Delaware Forum, the remaining counts must be dismissed on *forum non conveniens* grounds." *Lisa, S.A. v. Mayorga,* 2009 WL 1846308, at *10.

11. *Ison v. E.I. DuPont de Nemours & Co., Inc.,* 729 A.2d 832, 842 (Del.1999). *See also id.* at 838 ("It is not enough that all of the *Cryo–Maid* factors may favor [the] defendant. The trial court must consider the weight of those factors in the particular case and determine whether any or all of them truly cause both inconvenience and hardship."); *Taylor v. LSI Logic Corp.,* 689 A.2d 1196, 1199 (Del.1997) ("the *Cryo–Maid* factors ... provide the framework for an analysis of hardship and inconvenience. They do not, of themselves, establish anything. Thus, it does not matter whether only one of the *Cryo–Maid* factors favors defendant or all of them do. The issue is whether any or all of the *Cryo–Maid* factors establish that defendant will suffer overwhelming hardship and inconvenience if forced to litigate in Delaware.") (citing *Chrysler First Bus. Credit Corp. v. 1500 Locust LP,* 669 A.2d 104, 108 (Del.1995)).

Lisa claims, and therefore reversibly erred.

■ Lisa's claim is without merit, because the "overwhelming hardship" standard does not apply to Delaware actions—like this one—that were not "first filed." It is a well settled rule of Delaware law that "defendants moving to dismiss a *first-filed* suit on the ground of *forum non conveniens* must establish with particularity that they will be subjected to overwhelming hardship and inconvenience if required to litigate in Delaware." [12] Where the Delaware action is the first-filed, the plaintiff's choice of forum will be respected and rarely disturbed, even if there is a more convenient forum to litigate the claim. Indeed, in all cases where this Court has applied the "overwhelming hardship" standard, the Delaware action was either the first filed or the only filed action. [13]

■ Conversely, where the Delaware action is *not* the first filed, the policy that favors strong deference to a plaintiff's initial choice of forum requires the court freely to exercise its discretion in favor of staying *or dismissing* the Delaware action (the "*McWane* doctrine"). [14] These two *forum non conveniens* doctrines—overwhelming hardship and *McWane*—operate consistently and in tandem to discourage forum shopping and promote the orderly administration of justice "by recognizing the value of confining litigation to one jurisdiction, whenever that is both possible and practical." [15]

Here, Lisa's Delaware action was not the first filed. It was preceded by the 1998 and 1999 Florida Actions, the Federal Action, and possibly by other actions filed by Lisa in other fora worldwide. [16] Although the parties to the 1998 Florida

**12.** *Taylor,* 689 A.2d at 1199 (emphasis added).

**13.** *See Berger,* 906 A.2d 134 (applying the "overwhelming hardship" standard and reversing dismissal of a Delaware action that was the only action filed); *Candlewood Timber Group, LLC v. Pan Am. Energy, LLC,* 859 A.2d 989 (Del.2004) (reversing dismissal based on *forum non conveniens* of a Delaware action filed before a competing action in Argentina); *United Phosphorus Ltd. v. Micro-Flo, LLC,* 808 A.2d 761 (Del.2002) (holding that Delaware action was the first filed and remanding to the Superior Court to determine whether the defendant could establish "overwhelming hardship"); *Mar–Land Indus. Contractors, Inc. v. Caribbean Petroleum Refining, LP,* 777 A.2d 774 (Del.2001) (reversing dismissal for *forum non conveniens* because the Court of Chancery inappropriately applied a balancing test to a Delaware lawsuit that was the only action filed); *Warburg, Pincus Ventures, L.P. v. Schrapper,* 774 A.2d 264 (Del. 2001) (affirming denial of motion to dismiss a Delaware action that was the only action filed); *Ison,* 729 A.2d 832 (reversing dismissal of a Delaware action that was the only action filed, because the defendant failed to establish "overwhelming hardship"); *Taylor,* 689 A.2d 1196 (reversing dismissal of a Delaware ac-

tion where there was no "substantially identical companion litigation pending" in a competing jurisdiction, because the defendant did not establish "overwhelming hardship"); *Chrysler,* 669 A.2d 104 (reversing dismissal of a first-filed Delaware action because the Superior Court misconstrued *Cryo–Maid*).

**14.** *McWane Cast Iron Pipe Corp. v. McDowell–Wellman Engineering Co.,* 263 A.2d 281, 283 (Del.1970) ("as a general rule, litigation should be confined to the forum in which it is first commenced, and a defendant should not be permitted to defeat the plaintiff's choice of forum in a pending suit by commencing litigation involving the same cause of action in another jurisdiction of its own choosing."). *See also Chadwick v. Metro Corp.,* 856 A.2d 1066 (Table), 2004 WL 1874652, at *2 (Del. Aug. 12, 2004) ("The *McWane* Doctrine permits a Delaware judge to *dismiss or stay* an action in favor of a first-filed action pending in another jurisdiction.") (emphasis in original).

**15.** *United Phosphorus,* 808 A.2d at 764.

**16.** Lisa filed numerous related actions in Guatemala. *Lisa, S.A. v. Mayorga,* 2009 WL

Action are not identical to the parties in this Delaware case, the 1998 Florida Action squarely implicated the *McWane* doctrine, because it was filed in a jurisdictionally competent court and was "functionally identical" to the later-filed Delaware action.[17] Both actions arose out of a "common nucleus of operative facts"[18]—the 1992 sale of Lisa's interest in the Campero Group. Lisa itself claims that the filing of the 1998 Florida Action (which sought rescission of the 1992 sale) triggered the defendants' alleged conspiracy to defraud Lisa by reorganizing the Campero Group and transferring to the Delaware corporate defendants assets that were otherwise potentially responsive to a judgment in Lisa's favor. Indeed, in staying this Delaware action pending the resolution of the 1998 Florida Action, the Vice Chancellor found that the 1998 Florida Action "is very definitely a prior case" because Lisa conceded that it arose out of the same operative nucleus of facts.

The 1998 Florida Action was what propped up this Delaware action. Its dismissal caused that prop to collapse and warranted the dismissal of the Delaware action under *McWane*.[19] That the 1998 Florida Action is no longer pending does not change the outcome, even though language in *McWane* speaks in terms of a "prior action pending in another jurisdiction."[20] To allow Lisa to proceed with this Delaware action after the dismissal with prejudice of the predicate Florida action, would ignore the binding effect of the Florida adjudication, and create the possibility of inconsistent and conflicting rulings. That is precisely the outcome *McWane's* doctrine of comity seeks to prevent.[21] We therefore affirm the Court of Chancery's dismissal of Lisa's action, on *forum non conveniens* grounds, under *McWane*. Because dismissal of this entire case was appropriate on *forum non conveniens* grounds, we do not reach Lisa's

1846308, at * 10. The defendants claim that Lisa also filed actions in the British Virgin Islands, New York, Panama and Bermuda. Because the nature and status of those actions is unclear, we do not treat them as first filed. Although the 1999 Florida Action and the Federal Action cannot be treated as first filed under the *McWane* doctrine, those actions underscore the fact that Lisa's Delaware action was the *last* filed in this complicated family dispute.

17. *Chadwick*, 2004 WL 1874652, at *2 ("under the *McWane* doctrine, a duplicative action that is substantially or functionally identical to an earlier suit may be dismissed or stayed."). *See also id.* at n. 5; *Choice Hotels Int'l v. Columbus–Hunt Park DR. BNK Investors, LLC*, 2009 WL 3335332, at *7 (Del.Ch. Oct. 15, 2009) ("In any *McWane* analysis ... the parties and issues in the competing litigations rarely will be exactly identical. The court must, therefore, balance the lack of complete identity of parties and issues against the possibility of conflicting rulings which could come forth if both actions were allowed to proceed simultaneously. Rather than insisting that the parties in both actions be

identical, this court only requires substantial or functional identity.") (citations omitted).

18. *Chadwick*, 2004 WL 1874652, at *2 (citing *Dura Pharm., Inc. v. Scandipharm, Inc.*, 713 A.2d 925, 930 (Del.Ch.1998)).

19. As noted by the Court of Chancery, the dismissal of the 1998 Florida Action also raises questions of *res judicata* and collateral estoppel.

20. *McWane*, 263 A.2d at 283. *But see Taylor v. LSI Logic Corp.*, 715 A.2d 837, 842 (Del. 1998) (holding that "the doctrine of comity should not be used to prevent a Delaware Court from hearing an issue ... if there is no action pending *or decided* between the parties.") (emphasis added).

21. *McWane*, 263 A.2d at 283 (holding that the precedence given to a first-filed action is "impelled by considerations of comity and the necessities of an orderly and efficient administration of justice" and that inconsistent and conflicting rulings and judgment must be avoided).

claim that the Court of Chancery erred by denying jurisdictional discovery before dismissing the claims against most of the defendants for lack of personal jurisdiction.

## *CONCLUSION*

For the foregoing reasons, the judgment of the Court of Chancery is affirmed.