**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

SAM GLASSCOCK III
VICE CHANCELLOR

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DELAWARE 19947

Date Submitted: November 9, 2015
Date Decided: February 9, 2016

Michael A. Weidinger, Esquire
Alessandra C. Phillips, Esquire
Pinckney, Weidinger, Urban & Joyce LLC
1220 North Market Street, Suite 950
Wilmington, Delaware 19801

Blake Rohrbacher, Esquire
Elizabeth A. DeFelice, Esquire
Richards Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801

Re: *Jerome Vaccaro v. APS Healthcare Bethesda, Inc., et al.,*
Civil Action No. 9637-VCG

Dear Counsel:

This matter involves a dispute over severance obligations in an employment agreement between Plaintiff Jerome Vaccaro and Defendants APS Healthcare Bethesda, Inc. ("APS") and Universal American Corp. ("Universal"). The agreement was initially entered into the day before a merger between the Defendants, and later amended many months thereafter. Before Vaccaro initiated this action, Universal, the buyer, filed suit in the United States District Court for the District of Delaware (the "Federal Action") against a number of defendants representing the seller, including Vaccaro, alleging, among other things, that Universal was fraudulently induced to enter the merger. In this action, Universal asserts that it plans to raise the affirmative defense that the employment agreement

is a nullity because, by its terms, the enforceability of the employment agreement is based on the closing of the merger, which it argues was induced by fraud, and that Universal was similarly fraudulently induced to enter the employment agreement. Defendants have asked that I stay this action because the parties and issues in the first-filed Federal Action are sufficiently similar to warrant a stay under *McWane Cast Iron Pipe Corp. v. McDowell-Wellman Engineering Comp.*[1]  Based on the following reasons, I find that a stay of this action is warranted and grant the Defendants' motion.

Before applying the factors in *McWane*, I first describe the relevant facts[2] and procedural history as follows.  On January 11, 2012, Universal, Partners Healthcare Solutions Holdings, L.P. ("APSLP"), and Partners Healthcare Solutions ("Partners"), a majority-owned subsidiary of APSLP, entered into an agreement (the "Merger Agreement") whereby Universal would acquire Partners and rename the company APS Bethesda, Inc., which I refer to as "APS."[3]  Leading up to the execution of the Merger Agreement, Plaintiff Jerome Vaccaro acted as President and Chief Operating Officer of Partners.[4]  In contemplation that Vaccaro would continue in that role post-transaction, on the day before the Merger Agreement was executed,

---

[1] 263 A.2d 281 (Del. 1970).
[2] For purposes of this Letter Opinion, I draw the facts from the Plaintiff's Verified Complaint assuming their truth.
[3] Pl's Verified Complaint ("Compl.") ¶ 9.
[4] *Id.* at ¶ 10.

Vaccaro executed an employment agreement (the "Original Agreement") with APS and Universal that provided that Vaccaro would serve as President of APS and included provisions entitling Vaccaro to severance benefits in certain situations.[5] The vitality of the Original Agreement was made explicitly contingent on consummation of the contemplated acquisition transaction (the "Merger").[6] The Merger closed on March 2, 2012.

Following the Merger, Vaccaro alleges that his role in APS began to diminish and APS's performance dwindled.[7] As a result, in August 2012, Vaccaro expressed his desire to resign from APS and initiated discussion of an orderly transition of his duties and responsibilities.[8] Despite Vaccaro's desire to resign, however, he continued his employment. In early 2013, following the sustained decline in APS's performance, Universal began investigating an action against the sellers of APS for their alleged fraudulent inducement of Universal into closing the Merger.[9] Pursuant to its expected litigation, Universal asked Vaccaro to provide statements to support Universal's position, but Vaccaro refused.[10]

---

[5] *Id.* at ¶¶ 10–11.
[6] *Id.*, Ex. A (Original Agreement), at 1 ("This Agreement shall be of no force or effect, and none of [Vaccaro], [APS or Universal] or any of [their] affiliates shall have any obligation or liability hereunder, unless and until the transactions contemplated by the Merger Agreement are consummated.").
[7] *Id.* at ¶¶ 13–17.
[8] *Id.* at ¶¶ 18–19.
[9] *Id.* at ¶¶ 29–30.
[10] *Id.* at ¶¶ 31–38.

Finally, after months of pursuing an agreement concerning Vaccaro's transition from the company, APS, Universal, and Vaccaro executed an amendment to the Original Agreement (as amended, the "Amended Agreement," and together with the Original Agreement, the "Employment Agreement"), dated April 25, 2013, wherein Vaccaro agreed to continue his employment until June 28, 2013. The Amended Agreement did not replace the Original Agreement; instead, the Amended Agreement explicitly provided that the bulk of the Original Agreement remained in force.[11] Vaccaro alleges that on the final day of his employment, the Defendants attempted to obtain a general release from Vaccaro pursuant to the Employment Agreement.[12] According to Vaccaro, the release had been improperly altered and, rather than wait for the Defendants to draft a revised release agreement, Vaccaro executed the general release (the "Release") attached to the Original Agreement.[13] To date, Vaccaro has not received any severance compensation pursuant to the Employment Agreement.

A few months after Vaccaro's employment ended, on October 22, 2013, Universal filed the Federal Action (the "Original Federal Complaint") against the

---

[11] *Id.* at ¶ 39. The Amended Agreement purported to delete Section 8(c)(iii)(C) of the Original Agreement, which expressed a portion of Vaccaro's severance benefits, but otherwise stated, "[e]xcept as amended hereby, all other terms and conditions of the [Original Agreement] shall remain in full force and effect through the Termination Date." *Id.*, Ex. B (Amended Agreement), at 1.

[12] *Id.* at ¶ 51.

[13] *Id.* at ¶¶ 56–57.

sellers of APS and former APS executives, including Vaccaro, for fraudulently inducing the Merger and sought, among other things, rescission of the Merger on which the Employment Agreement is conditioned. On May 9, 2014, nearly seven months after Universal initiated the Federal Action, Vaccaro filed his Verified Complaint in this action, which includes claims for breaches of contract, fraud, and reformation, and seeks damages and declaratory relief. Shortly thereafter, the Defendants moved to dismiss or stay the Plaintiff's action (the "Motion") on two grounds. They argued that I should defer this action in favor of the first-filed Federal Action[14] and that this Court lacks subject matter jurisdiction to hear the dispute. In my letter opinion of October 15, 2014, I denied the Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction, leaving undecided the Defendants' other ground in its Motion.

In their briefing of the Motion to Dismiss or Stay, the Defendants represented that, in the Federal Action, the District Court had dismissed the fraud counts against Vaccaro for failure to plead fraud with sufficient particularity, but with leave to replead those allegations. Subsequently, on September 22, 2014, Universal amended its complaint in the Federal Action (the "Amended Federal Complaint"). The Amended Federal Complaint reasserts many of the fraud claims against the

---

[14] At oral argument, the Defendants clarified that they seek a stay of this action in favor of the Federal Action, and, in the alternative, seek dismissal. Oral Argument Tr. 25:24–26:2.

defendants, including Vaccaro, and includes an additional claim (the "Reverse Liability Claim") seeking "a declaratory judgment that Vaccaro is not entitled to any payment or other benefit under the [Employment Agreement]."[15]  Following oral argument on the Motion here, the Defendants represented to the Court that Vaccaro and other defendants had filed, on October 31, 2014, a motion to dismiss Universal's Amended Federal Complaint in the Federal Action.  In my letter opinion of January 9, 2015, I postponed my consideration of the Defendants' Motion to Dismiss or Stay in this action pending resolution of Vaccaro's motion to dismiss in the Federal Action, the resolution of which, I noted, would necessarily clarify disputed issues that I must consider here.  I also indicated in my letter opinion that any party could seek consideration of the Defendants' Motion to Dismiss or Stay if circumstances so warranted.

As discovery in this action proceeded, Vaccaro filed a Motion to Compel Production of Documents, on which I held oral argument on October 1, 2015—nearly ten months after my decision to continue the Defendants' Motion to Dismiss or Stay.  At oral argument on that motion, the Defendants requested that I revisit the continuance of my decision on the Motion to Dismiss or Stay and, as a result, I directed the parties to submit letter memoranda on whether I should continue to hold my decision on that Motion in abeyance.  In their respective letters, both parties

---

[15] Defs' Reply Br. 1–2.

indicated that, given the passage of time, I should revisit my decision. On October 26, 2015, I lifted the stay of my decision of the Defendants' Motion and informed the parties that they could submit further briefing, if necessary. After consideration of the parties briefing and argument to date, I find that a stay of this action is warranted and grant the Defendants' Motion.

In this action, the Defendants argue that Vaccaro seeks to enforce an employment agreement that was merely one piece of a fraudulently induced merger, and that Vaccaro's claim is therefore based on facts that are already at issue in the Federal Action. Accordingly, the Defendants assert that I should dismiss or stay this action in favor of the first-filed Federal Action pursuant to the Delaware Supreme Court's holding in *McWane*. "The granting of a stay is not a matter of right, but rests within the sound discretion of the court."[16] Compelled by "considerations of comity and the necessities of any orderly and efficient administration of justice,"[17] Delaware courts perform a three-part inquiry: (1) is there a prior action pending elsewhere; (2) involving the same parties and the same issues; (3) in a court capable of doing prompt and complete justice?[18] Through application of this inquiry, Delaware courts

---

[16] *Adirondack GP, Inc. v. Am. Power Corp.*, 1996 WL 684376, at *6 (Del. Ch. Nov. 13, 1996) (citing *McWane*, 263 A.2d at 283).
[17] *McWane*, 263 A.2d at 283.
[18] *LG Elecs., Inc. v. InterDigital Commc'ns, Inc.*, 114 A.3d 1246, at 1252 (Del. 2015).

7

seek to avoid wasteful and duplicative litigation, as well as the possibility of conflicting rulings in two courts.[19]

In this case, Vaccaro argues that the Federal Action is not a prior action, and thus does not implicate *McWane*, because the relevant counts in the Original Federal Complaint were dismissed and because the Amended Federal Complaint was filed after Vaccaro initiated this action. When the Court is presented with an otherwise first-filed complaint that has been amended, the Court will "compare[] the substance of the original case to that of the case as later composed."[20] The later-filed complaint will relate back to the first-filed complaint if they both "arise from a common nucleus of operative facts"—that is, if the claims "rely on and arise from the same factual foundation," the amended complaint should be considered filed as of the date of the original complaint.[21] Here, Universal initiated the Federal Action well before the filing of this action. The majority of the counts, however, including fraud in the inducement, were dismissed. Universal has represented to the Court that it has repled many of the dismissed claims, including fraud in the inducement, with greater particularity in the Amended Federal Complaint. I find that Amended Federal Complaint refers back to the Original Federal Complaint. Notwithstanding the

---

[19] *See McWane*, 263 A.2d at 283.

[20] *See Choice Hotels Int'l, Inc. v. Columbus-Hunt Park DR. BNK Investors, L.L.C.*, 2009 WL 3335332, at *6 (Del. Ch. Sept. 4, 2009) (quoting *McQuaide, Inc. v. McQuaide*, 2005 WL 1288523, at *4 (Del. Ch. May 24, 2005)).

[21] *See id.* at *7.

additional Reverse Liability Count, the Amended Federal Complaint realleges similar, if not the same counts that, like the Original Federal Complaint, arise from the facts surrounding the Merger. Therefore, the Federal Action constitutes a prior action such that I must consider the remaining *McWane* factors.

The second factor of *McWane* tests whether the parties and issues in the present action are the same as those comprised in the first-filed foreign action. In general, it is rare that the parties and issues in each case are fully identical. This Court has found that when the parties and issues are not identical, the Court must

> balance the lack of complete identity of parties and issues against the possibility of conflicting rulings which could come forth if both actions were allowed to proceed simultaneously. Rather than insisting that the parties in both actions be identical, this court only requires *substantial or functional identity*.[22]

Here, the parties in the two cases are not identical: Defendant APS is not a party to the Federal Action and the Federal Action includes nine parties that are not parties to the present action. Nonetheless, I find that the parties are functionally identical. Although APS is not a party to the Federal Action, its parent, Universal, is a plaintiff in the Federal Action as well as a party here. Moreover, the fact that there are more parties in the Foreign Action is not fatal because it merely reflects the fact that the Federal Action addresses issues that are broader than the action here.

---

[22] *Id.* (emphasis added) (citations omitted) (internal quotation marks omitted).

The issues present in the two cases are also not identical, at least they were not initially. Two separate cases will be deemed to implicate the same issues if they arise from a "common nucleus of operative facts."[23] In this case, the Defendants do not allege that Vaccaro's Complaint, by itself, implicates the Federal Action, but that they will raise an affirmative defense that implicates the issues raised in the Federal Action. In the Federal Action, Universal intends to show that it was fraudulently induced to execute the Merger Agreement and close the Merger, and thus seeks its rescission. If Universal is successful, it argues that it follows that the Employment Agreement is a nullity, thereby preempting Vaccaro's action here. Vaccaro argues that the issues in the two actions are not sufficiently similar because they are separated by time: the issues in the Federal Action are limited to the Merger, which occurred in March 2012, and the relevant issues in this action implicate only the facts surrounding the Amended Agreement, which was executed over a year later in April 2013, and the Release executed in June 2013. Vaccaro misstates the breadth of each action, however. In the Federal Action, Universal intends to establish facts showing that Vaccaro contributed to the alleged fraudulent inducement of the Merger Agreement; that Vaccaro helped perpetuate the fraud until the Merger closed; and that Vaccaro aided the concealment of the fraud post-Merger. Similarly,

---

[23] *Lisa, S.A. v. Mayorga*, 993 A.2d 1042, 1048 (Del. 2010) (quoting *Chadwick v. Metro Corp.*, 856 A.2d 1066 (Del. 2004) (TABLE)).

10

in this action Universal will seek to establish these facts to show that the Merger, on which the Employment Agreement hinged, was fraudulently induced.

Despite the apparent similarities between the two cases, Vaccaro argues that Universal is estopped from raising pre-Merger fraud to dispute the Employment Agreement here. According to Vaccaro, Universal waived its claims against Vaccaro because, at the time the parties executed the Amended Agreement, Universal was already aware of its fraudulent inducement claims. At this stage of the litigation, Vaccaro's "waiver" argument fails for two reasons. First, it is unclear to what extent Universal was aware of Vaccaro's involvement in the alleged fraud at the time it executed the Amended Agreement. Second, to the extent Vaccaro's argument that Universal waived its affirmative defense requires a determination of the merits, I find it premature to make that determination at this stage of the litigation. In sum, I conclude that the issues raised in the Federal Action are sufficiently similar to the issues raised in the Defendants' affirmative defense. In addition, despite the lack of precise identity between the parties and issues, I find that there is a perceptible risk of conflicting rulings if both cases were to proceed simultaneously. The Defendants have raised an affirmative defense in this action that may lead to a determination concerning the validity of the Merger, which determination could conflict with the findings in the first-filed Federal Action.

11

I note that Vaccaro challenges Universal's addition of the Reverse Liability Claim in the Amended Federal Complaint. Vaccaro asserts that the Defendants only belatedly inserted claims concerning the Employment Agreement into the Federal Action after Vaccaro had chosen to litigate those claims in this court. I need not reach a determination regarding the Reverse Liability Claim because I have already found that the remainder of Universal's Amended Federal Complaint, which relates back to the Original Federal Complaint, raises issues functionally identical to those present in the affirmative defense here.

Finally, I must determine that the District Court is capable of providing prompt and complete justice. It clearly is able to do so, and the parties do not suggest that the District Court lacks complete competence and jurisdiction to adjudicate the issues in question, which involve the application of New York contract law as well as the common law doctrine of fraud in the inducement. Vaccaro argues, however, that the District Court lacks the ability to offer prompt justice because it has failed to render what he perceives as a timely decision on his motion to dismiss, which has remained pending for over fifteen months. This factor alone does not render the District Court incapable of providing reasonably prompt justice; *McWane* does not instruct that an alternative forum must provide the most expeditious relief. The District Court has already granted one motion to dismiss and is sufficiently familiar

12

with the issues to determine whether Universal was fraudulently induced. Therefore, I find that the District Court is capable of providing prompt and complete justice.

Based on the foregoing, I conclude that the first-filed Federal Action involves the same issues and facts as are presented here, and that the Federal Court is capable of providing prompt and complete justice. The Defendants' Motion to Dismiss or Stay is GRANTED. This action is stayed pending the resolution of the Federal Action. The parties should update the Court of the progress of the Federal Action every 60 days or sooner, as the parties find appropriate. To the extent the foregoing requires an Order to take effect, IT IS SO ORDERED.

Sincerely,

*/s/ Sam Glasscock III*

Sam Glasscock III