**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| BLUE POINTER GESTURE, LLC,<br>2112 GROUP LLC, and RUSH<br>EQUIPMENT II, LLC, | )<br>)<br>)<br>) | |
| Plaintiffs, | ) | C.A. No. 2024-0820-DG |
| | ) | |
| v. | )<br>) | |
| SAMUEL SCHRADE, | )<br>) | |
| Defendant. | ) | |

## ORDER STAYING LITIGATION[1]

**WHEREAS:[2]**

 A. This action is a contract dispute. Plaintiffs Blue Pointer Gesture, LLC, 2112 Group, LLC, and Rush Equipment II, LLC seek to remove defendant Samuel Schrade as a member of 2112 Group under the 2112 Group Operating Agreement ("Operating Agreement") for allegedly breaching the Operating Agreement.[3]

---

[1] In this order, I cite to docket items as "Dkt.," Plaintiffs' exhibits as "PX," and Defendant's exhibits as "DX."

[2] The factual findings are generally drawn from Pls.' Verified Compl. ("Compl."), Dkt. 1, the attached exhibits and documents it incorporates by reference. *See, e.g.*, *Richardson v. New Residential Mortg. Loan Tr. 2019RPL3*, 2025 WL 2491199, at *4 (Del. Ch. Aug. 29, 2025) (quoting *Fitzgerald v. Fitzgerald Home Farm, LLC*, 2024 WL 1071970, at *2 (Del. Ch. Mar. 12, 2024)).

[3] *See generally* Compl.; Pls.' Ans. Br. in Opp'n to Def.'s Mot. to Dismiss ("AB"), Dkt. 10.

B.     Plaintiffs also seek specific performance, compelling Defendant to transfer certain assets to Plaintiffs pursuant to a separate, but related, Asset Purchase Agreement ("APA") the parties executed in connection with the Operating Agreement.[4]

C.     Plaintiff Blue Pointer Gesture, LLC ("Blue Pointer") is a Wyoming limited liability company.[5]  Plaintiffs 2112 Group, LLC ("2112 Group") and Rush Equipment II, LLC ("Rush") are Delaware limited liability companies with their principal places of business in Texas.[6]  Blue Pointer holds a 60% ownership interest in 2112 Group, which, in turn, wholly owns Rush.[7]

D.     On September 1, 2023, Blue Pointer and Defendant executed the Operating Agreement.[8]  Under the Operating Agreement, Blue Pointer agreed to contribute $750,000 as an initial capital investment into 2112 Group, and Defendant agreed to transfer approximately $500,000 of business equipment to 2112 Group in place of a monetary contribution.[9]

---

[4] *See* Compl. ¶ (c) (prayers for relief); AB at 15, 24–26; Def.'s Reply Br. in Supp. of his Mot. to Dismiss ("RB"), Dkt. 15 at 7–9.

[5]  Compl. ¶ 12.

[6] Compl. ¶¶ 11, 13.

[7] Compl. ¶¶ 11, 13.

[8] Compl. ¶16; Compl., PX A ("OA") at *1 (OA cover page, dated Sep. 1, 2023).

[9] Compl. ¶¶ 18–20; OA, Ex. A (appendix titled "Members and Unit Ownership").

E. Section 15.3 of the Operating Agreement is a forum selection and governing law provision.[10] Section 15.3 requires that

> [a]ny Proceeding arising out of or relating to [the Operating Agreement] or [2112 Group's] activities or properties may be brought only in the Delaware Court of Chancery as provided in [Delaware Limited Liability Company Act], in the state courts of the county where [2112 Group's] principal office is located, or if it has or can acquire jurisdiction, in the United States District Court for the district in which [2112 Group's] principal office is located.
>
> Each Member . . . irrevocably submits to the exclusive jurisdiction in any such Proceeding, waives any objection it may now or hereafter have to venue or to convenience of forum, agrees that all claims in respect of the proceeding shall be heard and determined only in any such court, and agrees not to bring any such Proceeding in any other court.[11]

F. On March 25, 2024, Defendant filed suit against Plaintiffs in Texas ("Texas Action").[12] Defendant asserted claims for Breach of Contract (related to the Operating Agreement and APA), Fraudulent Inducement,

---

[10] *See* OA § 15.3.

[11] OA § 15.3 (paragraph break added for readability).

[12] *See* OB, DX 1 ("TX Compl.") at subheadings A–G. The court may take judicial notice of documents whose contents are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." D.R.E. 201(b). "If the accuracy of the subject document's contents is disputed, the Court may take judicial notice to discern . . . what was said therein . . . but may not take judicial notice to establish the truth of its contents." *Indemnity Insur. Corp., RRG v. Cohen*, 2018 WL 487246, at *1 (Del. Ch. Jan. 18, 2018).

Breach of Fiduciary Duty, Conversion, Declaratory Judgment, Unjust Enrichment, and to produce an accounting.[13] Plaintiffs appeared and filed responsive pleadings in the Texas Action.[14]

G.  On August 2, 2024, Plaintiffs brought suit in Delaware.[15] Plaintiffs asserted similar claims, raising two counts for breaches of contract against Defendant; one for breach of the Operating Agreement and one for breach of the APA.[16]

H.  Plaintiffs allege Defendant materially breached both agreements by failing to transfer assets free and clear of liens and to satisfy his capital contribution obligations.[17] Plaintiffs contend these acts justify Defendant's removal as a member of 2112 Group.[18] They further argue that, although the Operating Agreement did not expressly require Defendant to obtain lien waivers, the obligation arises from the APA and the implied covenant of good faith and fair dealing.[19]

---

[13] *See generally* TX Compl.

[14] *See generally* OB, DX 2 ("TX Ans.").

[15] *See generally* Compl.

[16] *See* Compl. ¶¶ 64–95.

[17] Compl. ¶¶ 21–61.

[18] Compl. ¶ (b) (prayer for relief clauses); AB at 15, 22–26.

[19] AB at 30–31.  The Operating Agreement does not discuss lien waivers.  *See* OA §§ 3.1, 14.1, Ex. A (capital contribution provisions).  *See also* OB at 30–31; RB at 11–12.

I.       On October 11, Defendant filed his Motion to Dismiss or, in the alternative, Motion to Stay this Action in lieu of answering under Court of Chancery Rules 12(b)(1), 12(b)(3) and the first-filed rule, and 12(b)(6). [20]

J.       Defendant argues that the forum selection clause in the Operating Agreement permits suit in jurisdictions other than Delaware[21] and contends the Court should dismiss this action in favor of the earlier-filed Texas action.[22] Defendant also maintains that dismissal is proper under Court of Chancery Rule 12(b)(6) because 2112 Group is not a party to the APA, which disclaims third-party beneficiaries.[23]

K.       On August 5, 2025, the Court held a hearing on Defendant's motion and took the motion under advisement. [24]

**IT IS ORDERED**, this 19th day of November, 2025, that:

1.       Defendant's motion is GRANTED IN PART and DENIED IN PART.  This litigation is STAYED pending the final disposition of the Texas Action.

---

[20] *See* Dkt. 8; OB at 3.

[21] OB at 19–20; RB at 2–4.

[22] OB at 3.

[23] OB at 28–31; RB at 9–10.

[24] *See* Dkt. 22.

2. Defendant moved to dismiss the complaint under Court of Chancery Rules 12(b)(1), 12(b)(3) and 12(b)(6).[25] First, Defendant contends that the Court should dismiss or stay this action under the first-filed rule.[26] Next, Defendant asserts that Plaintiffs' claims are overripe, which precludes Plaintiffs from bringing their claims here.[27] Finally, Defendant argues that Plaintiffs failed to state a viable claim.[28] Because I find that this action should be stayed under the first-filed rule, I need not address Defendant's other contentions.

**This action should be stayed under the first-filed doctrine.**

3. Defendant argues that I should apply the Supreme Court's holding in *McWane Cast Iron Pipe Corp. v. McDowell-Wellman Engineering Co.*,[29] and dismiss or stay these proceedings in favor of the Texas Action under Rule 12(b)(3).[30] Defendant raises this argument because the Texas Action involves, essentially, the same facts and claims Plaintiff brings here.[31] Therefore, Defendant concludes, in the interest of efficiency and to avoid the

---

[25] Def.'s Mot. to Dismiss, Dkt. 8; OB at 4 n.1.

[26] OB at 3, 9–24.

[27] OB at 3, 24–27.

[28] OB at 3, 28–31.

[29] 263 A.2d 281 (Del. 1970).

[30] OB at 9–11.

[31] OB at 11–15

risk of conflicting judgments, the Court should dismiss Plaintiffs' claims or pause these proceedings.[32]

4. Plaintiffs dispute Defendant's characterization of their claims. They contend that the Operating Agreement's forum selection clause requires this dispute to be heard in Delaware, and that the Texas Action should not impact this present action.[33] Further, Plaintiffs assert that Delaware has a special interest in resolving the dispute because it concerns the governance of and rights of members of a Delaware limited liability company.[34] Plaintiffs maintain that the Court should allow their claims to proceed for those reasons.[35]

5. "On a motion to dismiss under Rule 12(b)(3) [and *McWane*], 'the [C]ourt is not shackled by the plaintiff[s'] complaint and is permitted to consider extrinsic evidence from the outset.'"[36] Section 15.3 of the Operating Agreement is a forum selection clause. Neither party disputes this.[37] Because

---

[32] OB at 11–15.

[33] AB at 16–24.

[34] AB at 21–23.

[35] AB at 21–23.

[36] *Riordan Ltd. v. IVN Consulting, LLC*, 2021 WL 2879786, at *3 (Del. Ch. July 9, 2021) (quoting *Troy Corp. v. Schoon*, 2007 WL 949441, at *2 (Del. Ch. Mar. 26, 2007)) (analyzing a forum selection clause in conjunction with a *McWane* analysis).

[37] *See* Compl. ¶¶ 9–10; OB at 18–21; AB at 16–24; RB at 2–8.

an enforceable forum selection clause may preempt application of the *McWane* doctrine, I analyze Section 15.3's applicability first.[38]

6. "[W]here contracting parties have expressly agreed upon a legally enforceable forum selection clause, a court should honor the parties' contract and enforce the clause, even if, absent any forum selection clause, the *McWane* principle might otherwise require a different result."[39] "Such clauses 'are presumptively valid and should be specifically enforced unless the resisting party clearly show[s] that enforcement would be unreasonable and unjust, or that the clause [is] invalid for such reasons as fraud and overreaching.'"[40]

7. In this case, the Operating Agreement's forum selection clause does not preempt the first-filed rule. Forum selection clauses fall into three categories: exclusive, partially exclusive, and nonexclusive.[41] In an exclusive

---

[38] *See, e.g.*, *Ingres Corp. v. CA, Inc.*, 8 A.3d 1143, 1145 (Del. 2010); *West v. Access Control Related Enters., LLC*, 296 A.3d 378, 387–88 (Del. 2023). The first-filed rule is also referred to as the "*McWane* doctrine." *See generally* Donald J. Wolfe and Michael A. Pittenger, *Corporate and Commercial Practice in the Delaware Court of Chancery* ("Wolfe & Pittenger"), § 5.01 (2nd ed. 2024).

[39] *Ingres Corp.*, 8 A.3d at 1146.

[40] *Lone Pine Res., LP v. Dickey*, 2021 WL 2311954, at *14 (Del. Ch. June 7, 2021) (quoting *Sylebra Cap. P'rs Master Fund, Ltd. v. Perelman*, 2020 WL 5989473, at *10 (Del. Ch. Oct. 9, 2020)).

[41] *See In re Bay Hills Emerging P'rs I, L.P.*, 2018 WL 3217650, at *4 (Del. Ch. July 2, 2018); *MICH II Hldgs. LLC v. Schron*, 2012 WL 2499507, at *4. *See*

forum selection clause, the parties designate one forum as the only jurisdiction where a suit may be brought.[42] By contrast, a nonexclusive clause states the parties consent to jurisdiction in the forum indicated, but they may bring their claims elsewhere.[43] A partially exclusive clause either restricts the forum where parties can raise certain claims (such as claims arising from the agreement), or permits the parties to select between a limited number of forums.[44] When a forum selection clause is not fully exclusive, and the claims raised do not violate it, *McWane* applies.[45]

8. Section 15.3 is a partially exclusive forum selection clause because it permits claims to be brought either in Delaware or in Texas. 2112 Group's principal place of business is in Harris County, Texas.[46] Therefore, the Operating Agreement permits the parties to bring suit either in Delaware,

---

*generally, e.g.*, Tina L. Stark, *Negotiating and Drafting Contract Boilerplate* 129 (Lauren Reiter Brody & Frances Kulka Browne eds., 2003).

[42] Tina L. Stark, *Negotiating and Drafting Contract Boilerplate* 129 (Lauren Reiter Brody & Frances Kulka Browne eds., 2003).

[43] Tina L. Stark, *Negotiating and Drafting Contract Boilerplate* 129 (Lauren Reiter Brody & Frances Kulka Browne eds., 2003).

[44] *See MICH II Hldgs.*, 2012 WL 2499507, at *4.

[45] *See id.* at *3-4.

[46] I note the record does not specify the county in which 2112 Group's principal place of business is located. At best, Defendant speculates it is in Collin County, Texas. AB at 19 n.2. However, by Defendant's own reasoning, 2112 Group could just as easily operate where Defendant is located. *See Id.*; OB, DX B at *102 (Defendant entering an employment contract in Harris County). I infer that 2112 Group's principal place of business is located in Harris County.

Harris County, Texas, or the United States District Court for the Southern District of Texas.[47]

9.      Because Defendant adhered to the forum selection provision, it does not preempt the first-filed rule.[48]  The Court must apply the *McWane* test to this proceeding.[49]

10.      "Under the first-filed rule, a Delaware court typically will defer to a first-filed action in another forum if that action involves substantially the same parties and issues as the litigation pending in Delaware and will stay the later-filed Delaware action pending adjudication of the issues in the competing forum."[50]

11.      When a party invokes the first-filed rule, Delaware courts conduct a three-part inquiry: (1) is there a prior action pending elsewhere; (2)

---

[47] U.S. Courts, *Maps of U.S. Courts of Appeals and District Courts*, Civics Education Project, https://www.lb5.uscourts.gov/CivicsEducation/FederalJudiciary/Federal%20Judiciary_Maps%20of%20Federal%20Circuits%20and%20District%20Courts.pdf (last visited November 4, 2025).  The Court may take judicial notice of facts not subject to reasonable dispute, such as the geographic jurisdiction of U.S. federal courts.  D.R.E. 201(b).

[48] *MICH II Hldgs.*, 2012 WL 24996507, at *4 ("[A]lthough there are competing actions proceeding in Delaware and New York, none of those actions violates or is inconsistent with the forum selection clauses.  Thus, this Court must look to its default rules under *McWane*.").

[49] *MICH II Hldgs.*, 2012 WL 24996507, at *4.

[50] Wolfe & Pittenger § 5.01[a].

in a court capable of doing prompt and complete justice; (3) involving the same parties and the same issues?[51]

12. The Texas action is a prior action because it was filed in March 2024—approximately four months before the Delaware action.[52]

13. The parties and issues in both actions are substantially the same.[53] In the Texas action, Defendant sued Blue Pointer and its sole owner Martin, along with Rush II and other Martin-affiliated entities.[54] The Delaware action was brought by Blue Pointer, Rush II and 2112 Group against Defendant.[55]

14. Although 2112 Group is not named in the Texas action, its majority owner, Blue Pointer, its minority owner, Defendant, and its wholly owned subsidiary, Rush II, are all parties to that action.[56] 2112 Group could be joined if necessary to provide complete relief to Plaintiffs. Plaintiffs also

---

[51] *See LG Elec., Inc. v. Interdigital Commc'ns., Inc.*, 144 A.3d 1246, 1252 (Del. 2015) (citing *McWane*, 263 A.2d at 281).

[52] *See, supra,* ¶¶ F, G.

[53] Plaintiffs did not address this issue in their brief, which amounts to conceding this point. *See, e.g.*, *Emerald P'rs v. Berlin*, 726 A.2d 1215, 1224 (Del. 1999) (holding any issues not briefed are waived).

[54] TX Compl. at case caption.

[55] Compl. at 1.

[56] TX Compl. at case caption; Compl. ¶¶ 11–15; OB at 4–9; AB at 3–4, 14; OA at signature pages.

maintain that the APA is a material piece of the Operating Agreement and that 2112 Group is an intended third-party beneficiary of the APA, so it can be heard with claims relating to the Operating Agreement.[57] Thus, 2112 Group's absence is of limited importance.[58]

15.     Both actions arise from a common nucleus of operative facts because all of the claims stem from the same contracts.[59] The Texas action seeks to rescind the Operating Agreement and the APA, alleging that Martin and his affiliated entities such as Blue Pointer and Rush II, committed fraud and theft.[60] Conversely, this Delaware action seeks to enforce the same agreements, alleging that Defendant failed to make his capital contribution free and clear of liens, and to compel an asset transfer that Defendant seeks to rescind in Texas.[61] Litigating both actions would be inefficient and pose an unnecessary risk of conflicting judgments. The Court is satisfied that the

[57] AB at 4–7, 27–29.

[58] *See Vaccaro v. APS Healthcare Bethesda, Inc.*, 2016 WL 519866, at *3 (Del. Ch. Feb. 9, 2016) (finding the parties to be functionally identical when one party was not joined in the first-filed action).

[59] *Compare* Compl. *with* TX Compl. *and* TX Ans. *Choice Hotels Intern'l, Inc. v. Columbus-Hunt Park DR. BNK Investors, L.L.C.*, 2009 WL 3335332, at *7 (Del. Ch. Oct. 15, 2009).

[60] *See generally* TX Compl. *and* TX Ans.

[61] *Compare* Compl. *with* TX Compl. *and* TX Ans.

parties and issues are "functionally identical[,]" satisfying *McWane*'s third inquiry.[62]

16. Plaintiffs argue that it is unclear whether a Texas court has the authority to remove a member from 2112 Group.[63] Even if the Texas court could exercise such authority, Plaintiffs argue, Delaware's substantial interest in the governance of Delaware entities and the interpretation of Delaware operating agreements warrants denial of a stay.[64] The Court disagrees.

17. Plaintiffs characterize this dispute as one of governance because Plaintiffs seek to remove a member of the LLC. But the heart of the issue is whether alleged breaches of the APA and Operating Agreement, if proved, are sufficient to trigger the Operating Agreement's removal clause.[65] A Texas court would be engaging in straightforward contract interpretation under Delaware law.[66]

---

[62] *See, e.g.*, *Lisa, S.A. v. Mayorga*, 993 A.2d 1042, 1048 n.17 (Del. 2010) (quoting *Choice Hotels*, 2009 WL 3335332, at *7).

[63] Draft Tr. of Oral Arg. on Def.'s Mot. to Dismiss at 34:3–38:1 (Aug. 5, 2025).

[64] AB at 21.

[65] *Contrast* Compl. ¶¶ 16–63 (alleging only that Defendant breached the agreements) *with* AB at 21–23.

[66] LLCs are creatures of contracts. *New Enter. Assocs. 14, L.P. v. Rich*, 295 A.3d 520, 580 (Del. Ch. 2023); 1 Symonds & O'Toole on DE Limited Liability Cos. § 4.01 (2025) ("[A] 'limited liability company agreement' is an agreement, which denotes an undertaking [that is] contractual in nature."). Because Delaware gives strong deference to parties' contractual agreements, and the Texas court will be

18.     The Delaware LLC Act[67] specifically states that to "[i]t is the policy of this chapter to give the maximum effect to the principle of freedom of contract and to the enforceability of limited liability company agreements."[68] Which includes the "relative rights, powers and duties as the limited liability company agreement may provide" to its managers.[69] The statute also permits the parties to an LLC agreement to subject a party "to specified penalties or specified consequences" including "reducing or eliminating the defaulting member's proportionate interest in a limited liability company . . . [and] forfeiture of the defaulting member's limited liability company interest[.]"[70] This Court has enforced provisions permitting the expulsion of an LLC member.[71]

---

applying Delaware law, it seems unlikely that a Texas court could not fully adjudicate the claims arising from the Operating Agreement.  *See* 295 A.3d at 580.

[67] 6 *Del. C.* §§ 18-101–1208.

[68] 6 *Del. C.* § 18-1101.

[69] 6 *Del. C.* § 18-404.

[70] *See* 6 *Del. C.* §§ 18-306, 18-502.

[71] 1 Symonds & O'Toole on DE Limited Liability Cos. § 5.04[E] (2025); *Walker v. Resource Dev. Co. Ltd., L.L.C.*, 791 A.2d 799, 815 (Del. Ch. 2000).  "A limited liability company agreement may provide that the interest of any member who fails to make any contribution that the member is obligated to make shall be subject to specified penalties" including eliminating or forfeiting the defaulting member's interest in the LLC. Symonds & O'Toole on DE Limited Liability Cos. § 5.04[E] (2025) (citing 6 *Del. C.* § 18-306(1), (2)).

19.	In my view, there is no substantial reason that a Delaware court must weigh in on the removal issue under the circumstances presented here. The Court therefore finds that the Texas court is a court capable of providing complete relief to the parties.

20.	The Court of Chancery has inherent authority to control its docket.[72] This includes the power to stay litigation based on comity, efficiency, or common sense.[73] The Court may exercise this discretion freely when a prior action is pending elsewhere in a court capable of providing prompt and complete justice involving the same parties and the same issues.[74]

21.	The Court's discretion in managing its docket is guided by the substantial progress of the Texas action, in which both parties have appeared, asserted claims and counterclaims, and continued to litigate.[75]

22.	The Delaware action, on the other hand, presents no compelling need for immediate adjudication to prevent prejudice to either party. Given the advanced stage of the Texas action, I find duplicating it in Delaware would impose unnecessary costs without meaningful benefit.

---

[72] *MICH II*, 2012 WL 2499507 at *4.

[73] *Id.* at *5 (citing Donald J. Wolfe, Jr. & Michael A. Pittenger, *Corporate and Commercial Practice in the Delaware Court of Chancery* § 5.01 (2010)).

[74] *MICH II*, 2012 WL 2499507 at *5.

[75] *See generally* TX Compl.

23.    Because I find that this litigation should be stayed under *McWane*, I need not rule on Defendant's other arguments. This action is STAYED pending final adjudication of the Texas action.

24.    If the Texas Court determines that it does not have the authority to remove a member of 2112 Group, or declines to rule on that issue, the parties may return to this Court for adjudication.

25.    The parties must submit a joint status report every 90 days to inform the Court about the state of the Texas Action.  The first status report is due on February 20, 2026.  The parties must also provide the Texas Court with a copy of this order.

26.    This Order constitutes a "Report" under Court of Chancery Rule 144.[76]  Exceptions are stayed pending issuance of my Final Report.[77]

/s/ *Danielle Gibbs*
Magistrate in Chancery

---

[76] Ct. Ch. R. 144(b)(1).

[77] Ct. Ch. R. 144(b)(2), (c)(2)(A).