# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DANNY DAVID CZARNINSKI BAIER, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 6896-VCS |
| | : | |
| UPPER NEW YORK INVESTMENT | : | |
| COMPANY LLC, NORTH PARK | : | |
| AVENUE INVESTMENT COMPANY | : | |
| LLC, UPPER HUDSON INVESTMENT | : | |
| COMPANY LLC, JOHNY JACOBO | : | |
| CZARNINSKI BAIER, and VIVIAN | : | |
| CZARNINSKI DE ADLER, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

Date Submitted:  January 16, 2018
Date Decided:  April 16, 2018


Douglas D. Herrmann, Esquire of Pepper Hamilton LLP, Wilmington, Delaware, Attorney for Plaintiff, Danny David Czarninski Baier.

Thomas W. Briggs, Jr., Esquire and Matthew R. Clark, Esquire of Morris, Nichols, Arsht & Tunnell LLP, Wilmington, Delaware, Attorneys for Defendants Upper New York Investment Company LLC, North Park Avenue Investment Company LLC, Upper Hudson Investment Company LLC, and Johny Jacobo Czarninski Baier.

Richard L. Renck, Esquire of Duane Morris LLP, Wilmington, Delaware and Michael A. Charish, Esquire of Schulman & Charish LLP, New York, New York, Attorneys for Defendant Vivian Czarninski Baier de Adler.


**SLIGHTS, Vice Chancellor**

Plaintiff, Danny David Czarninski Baier ("Danny"), brings this action against Defendants, Upper New York Investment Company LLC, North Park Avenue Investment Company LLC, Upper Hudson Investment Company LLC (collectively, the "LLC Defendants"), Johny Jacobo Czarninski Baier ("Johny") and Vivian Czarninski Baier de Adler ("Vivian") (collectively, "Defendants"), in which he alleges that Defendants engaged in a fraudulent scheme and conspiracy to deprive him of his inheritance from his parents' estate.[1]  Johny and the LLC Defendants have moved to dismiss Danny's complaint for lack of subject matter jurisdiction, lack of personal jurisdiction, forum *non conveniens*, insufficient process, insufficient service of process, failure to state a claim and failure to join an indispensable party. Because the Court lacks subject matter jurisdiction over the controversy and personal jurisdiction over certain of the Defendants, the motion to dismiss must be granted.[2]

---

[1] I refer to the three siblings (Danny, Johny and Vivian) by first name to avoid confusion. I intend no disrespect.

[2] As explained below, Vivian initially moved to dismiss the claims against her but later appeared to withdraw that motion.  Given that the Court has determined that it lacks subject matter jurisdiction over all of Danny's claims, and lacks personal jurisdiction over a necessary party, Johny, the claims against Vivian must be dismissed as well.

# I. FACTUAL BACKGROUND

I draw the facts from the well-pled allegations in the Verified Complaint (the "Complaint"), documents incorporated or referenced in the Complaint and, pursuant to Court of Chancery Rules 12(b)(1) and (2), certain materials extrinsic to the pleadings, such as affidavits, all of which are proper reference points when the Court determines whether it can exercise jurisdiction over claims and parties.[3]

## A. The Parties and Prior Litigation

Danny, Johny and Vivian (collectively, the "siblings") are citizens of Ecuador and Germany.[4] Danny and Johny reside in Ecuador; Vivian resides in Israel.[5] According to the Complaint, the LLC Defendants are Delaware limited liability companies that Johny controls and owns either directly or indirectly.[6]

The siblings' longstanding dispute relates to their inheritance from their parents, Alfredo and Ruth (the "parents"), who died intestate in Ecuador in August

---

[3] *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 169 (Del. 2006); *In re Career Educ. Corp. Deriv. Litig.*, 2007 WL 2875203, at *9 (Del. Ch. Sept. 28, 2007); *Crescent/Mach I P'rs, L.P. v. Turner*, 846 A.2d 963, 974 (Del. Ch. 2000); *Hart Hldg. Co. Inc. v. Drexel Burnham Lambert Inc.*, 593 A.2d 535, 538 (Del. Ch. 1991).

[4] Compl. ¶¶ 9–10, 14.

[5] *Id.*

[6] Compl. ¶¶ 11–13.

2003 and January 2013, respectively.[7] Alfredo built one of the largest commercial groups in Ecuador, El Rosado Group (or the "Group"), and the parents allegedly held assets in both Ecuador and Israel at the time of their deaths (the "Estate").[8] According to the Complaint, Alfredo maintained numerous bank accounts around the world and structured the Group as a complicated web of companies owned directly or indirectly by Alfredo, Ruth, Danny, Johny and Vivian.[9]

After Alfredo's passing in 2003, and Ruth's in 2013, the siblings commenced various proceedings in Israel and Ecuador in which they sought adjudication of various aspects of their inheritance rights.[10] The siblings' dispute brought them to Delaware because the Complaint alleges Johny wrongfully transferred El Rosado Group stock that allegedly should be part of the siblings' inheritance (the

---

[7] Compl. ¶¶ 38, 61.

[8] Compl. ¶¶ 21, 25–26, 40.

[9] Compl. ¶¶ 7, 26, 28.

[10] Compl. ¶¶ 3, 38–71. The Complaint says nothing of the Ecuador estate proceedings. Thus, I consider the Ecuador estate proceedings for the jurisdiction analyses only.

"Inheritance Stock")[11] to three British Virgin Island ("BVI") entities, and then to the Delaware LLC Defendants.[12]

Danny's allegations of Johny's wrongdoing present an ironic twist on a familiar theme. On September 28, 2011, Vivian filed an action in this Court against, *inter alia*, Johny *and Danny* ("Vivian's complaint"),[13] premised upon the same operative allegations that Danny now asserts against Johny in the Complaint.[14] Specifically, the Complaint alleges Johny engaged in the same five-step fraudulent scheme (the "fraudulent scheme") that formed the basis of Vivian's complaint by:

---

[11] The Complaint refers to the siblings' inheritance as "Jointly Owned Assets" and defines such Jointly Owned Assets as "assets of their deceased parents . . . [in which] each sibling owns an undivided one-third interest." Compl. ¶ 3. According to the Complaint, Jointly Owned Assets appears to be broader than Inheritance Stock. *See, e.g.*, *id.* ¶ 91 ("Johny stole hundreds of millions of dollars of value from Danny, and Ruth and Alfredo's estate, by transferring all of the shares . . .").

[12] Since the Complaint alleges wrongdoing by Johny as to El Rosado Group holdings generally, I consider Alfredo and Ruth's estates together even though they were created at different times.

[13] Vivian's complaint asserted two counts: (1) fraud and abuse in violation of Article 17 of the Corporate Act of Ecuador ("Article 17") and (2) unjust enrichment. Dkt. 1.

[14] Dkt. 1; Compl. ¶ 19 ("Danny's claims arise out of the facts and subject matter of this action, which was originally filed by Vivian . . ."); *id.* ¶ 151 ("In a Memorandum Opinion dated October 31, 2013, this Court held that Vivian's allegations against Johny—which are substantially similar to the allegations made by Danny against Johny in support of his claims . . ."). I note that substantial portions of the Complaint are identical or nearly identical to Vivian's complaint, including several headings. *Compare id.* ¶¶ 10, 15–17, 25, 73–85, 87–88, 90, 93–110, *with* Dkt. 1, ¶¶ 2, 10–12, 18, 38–50, 52–54, 58–67, 70–71, 73–78.

4

"(a) converting [Importadora El Rosado Cia. Ltda.,] El Rosado Ltd.[, the primary operating company of the Group] to a corporation; (b) consolidating El Rosado Group through a series of mergers; (c) increasing capital to dilute the other shareholders; (d) transferring a substantial majority of El Rosado corporate shares to shell companies in the British Virgin Islands for no consideration; and (e) re-domiciling the BVI companies to Delaware, where [the LLC Defendants] now hold the El Rosado shares."[15]

On October 31, 2013, the Court issued a decision on defendants' (including Danny's) motions to dismiss Vivian's complaint wherein, per the parties' agreement, the Court considered only two grounds for dismissal:  lack of subject matter jurisdiction and failure to state a claim.[16]  As to subject matter jurisdiction, this Court held that it could exercise subject matter jurisdiction over Vivian's unjust enrichment and Article 17 claims premised on her direct ownership of Group stock, but not over the claims premised on her purported ownership of Group stock by

---

[15] Compl. ¶¶ 26, 76; *compare id.* ¶¶ 73–85, 87–88, 90, 93–110, *with* Dkt. 1, ¶¶ 38–50, 52–54, 58–67, 70–71, 73–78.  As described, the fraudulent scheme appears to concern only Inheritance Stock, not Jointly Owned Assets more broadly.

[16] *de Adler v. Upper New York Inv. Co. LLC*, 2013 WL 5874645, at *1 (Del. Ch. Oct. 31, 2013) ("*de Adler*").  "The Defendants [in response to Vivian's complaint] presented a joint defense."  *Id.*

inheritance.[17]  As to failure to state a claim, the Court found Vivian's complaint pled a reasonably conceivable Article 17 claim and "a reasonably conceivable basis for equitable tolling of Vivian's claims."[18]  The Court determined that the Article 17 claim obviated need for the redundant unjust enrichment claim, a subsidiary claim.[19]  The Court also determined that Vivian's claims of wrongful conduct under Article 17 were not barred by *res judicata* or collateral estoppel based on administrative decisions rendered in Ecuador.[20]

## B. Estate Proceedings in Israel and Ecuador

In the Israeli estate proceedings, the court determined that the Estate is governed by Ecuadorian law, under which the Estate is to be divided into equal portions between the three siblings.[21]  It does not appear that the Israeli courts conducted an inventory of, or endeavored to distribute, the Estate's assets.[22]  An

---

[17] *Id.* at *11–12.  More specifically, the Court held it could exercise subject matter jurisdiction over Vivian's claims if they were based on her direct holdings of El Rosado Group stock because adjudicating those claims would not require the Court to delve into Estate matters that were before tribunals outside of the United States.

[18] *Id.* at *15–16.

[19] *Id.* at *17.

[20] *Id.*

[21] Compl. ¶¶ 45, 51.

[22] *See* Opening Br. in Supp. of Defs.' Mot. to Dismiss ("Opening Br."), Ex. A at 41–42; Opening Br., Ex. B at 2; Opening Br., Ex. C at 4, 6; Opening Br., Ex. D; Opening Br.,

inventory and distribution, however, did occur in connection with Ecuadorian probate proceedings. While the Complaint acknowledges the decisions of the Israeli courts entitling the siblings to equal thirds of the Estate, it omits any discussion of the Ecuadorian probate proceedings, despite recognizing that "the whereabouts of Alfredo's assets" remained an open question until recently.[23]

The inventory performed in Ecuador in 2007 revealed that Alfredo's estate included small direct stock holdings in certain Group entities, valued at approximately $124,000.[24] In 2012, Vivian asked an Ecuadorian court to include in the inventory indirect holdings of various Group entities that she claimed also belonged to Alfredo.[25] In 2016, an Ecuadorian tribunal held "there is no record in the proceedings that [Alfredo] left approximately 41 companies and there is no record in the proceedings that 'shares were interconnected so that some companies controlled the other ones.'"[26] Thus, the Ecuadorian courts have determined that

---

Ex. E at 4; Opening Br., Ex. Q at 10–11, 12–13; Opening Br., Ex. R at 17; Opening Br., Ex. S at 2; Opening Br., Ex. T at 4; Opening Br., Ex. U at 5–6.

[23] Compl. ¶¶ 56, 111.

[24] Opening Br., Ex. H at 3.

[25] Opening Br., Ex. J at 2. When the Ecuadorian court declined to include indirect holdings of various Group entities in Alfredo's estate, Vivian appealed that decision to no avail. Opening Br., Ex. K at 3–4.

[26] Opening Br., Ex. L at 10.

7

Alfredo's estate does not include El Rosado Group stock beyond the small block accounted for in the inventory process.

After Ruth's passing, similar inventory proceedings occurred in Ecuador, in which it was determined that Ruth's estate included small stock holdings of one El Rosado Group company, worth approximately $2,819, but no additional Group holdings.[27] Again, Vivian failed to establish that Ruth's estate included additional, indirect holdings of El Rosado Group stock.[28] In January 2017, an Ecuadorian court ordered the distribution of Alfredo's estate, as inventoried, and in April 2017, the same was ordered for Ruth's estate.[29]

### C. Procedural Posture

Following the Court's decision in *de Adler*, the parties continued to litigate the remaining claims in Vivian's complaint. On February 25, 2016, the Court issued a stay to allow the parties to pursue alternative dispute resolution efforts.[30] Formal mediation took place in May 2016, but did not produce a global resolution.[31]

---

[27] Opening Br., Ex. M at 3.

[28] Opening Br., Ex. N at 7.

[29] Opening Br., Ex. O at 5; Opening Br., Ex. P at 9.

[30] Dkt. 183; Compl. ¶ 129.

[31] Compl. ¶ 130.

8

Negotiations continued following the mediation. The parties ultimately reached an agreement in principle to settle, subject to the negotiation of a final agreement.[32] While negotiating a formal settlement agreement, discussions between all three siblings reached an impasse, but Vivian and Johny continued to negotiate their agreement.[33]

On October 3, 2016, Danny filed an answer to Vivian's complaint.[34] Two weeks later, he filed an amended answer with a counterclaim against Vivian in which he sought to prevent consummation of any settlement agreement between Johny and Vivian. Danny also brought four cross-claims against Johny and the LLC Defendants alleging fraud and abuse in violation of Article 17 as well as common law fraud, conversion and wrongful possession.[35] On December 7, 2016, Johny and Vivian informed the Court of their agreement to settle Vivian's claims against Johny (the "Settlement Agreement").[36] On December 29, 2016, Johny, Vivian and the LLC Defendants filed a notice of dismissal stating that Vivian's claims against Johny

---

[32] Dkt. 186 at 1; Dkt. 187 at 1–2; Dkt. 188 at 1.

[33] Dkt. 187 at 1–2; Dkt. 188 at 1.

[34] Dkt. 189.

[35] Dkt. 194.

[36] Dkt. 197 at 2.

and the LLC Defendants would be dismissed with prejudice and her claims against Danny would be dismissed without prejudice.[37] The Court approved the notice of dismissal over Danny's objection.[38]

In February 2017, Danny again sought to amend his answer, counterclaim and cross-claims.[39] In August 2017, the Court ordered a realignment of the parties in this action, whereby Danny became the plaintiff and Vivian, Johny and the LLC Defendants became Defendants.[40] Danny filed an amended Complaint on August 11, 2017, which became the operative complaint.[41]

The Complaint sets forth eleven counts against Johny, the LLC Defendants and Vivian, premised on the five-step fraudulent scheme first described in Vivian's complaint against Johny and Danny, and also on the Settlement Agreement.[42] The Complaint sets forth three counts against Johny and the LLC Defendants: Count I

---

[37] Dkt. 199; Dkt. 202.

[38] Dkt. 232 at 66–73.

[39] Dkt. 208.

[40] Dkt. 233 at 2.

[41] *Id.*; Dkt. 234.

[42] With regard to the Settlement Agreement, Danny essentially alleges that Johny and Vivian seek "to wrongfully distribute or divide Jointly Owned Assets, whether they be (a) assets that remain held in accounts in Alfredo and Ruth's name; or (b) assets held in Alfredo and Ruth's name at the time of their deaths, but which have subsequently been withdrawn, transferred or converted." Compl. ¶ 137. *See also* Compl. ¶¶ 133, 139.

seeks injunctive relief to prevent Johny from transferring the Inheritance Stock and from taking any action that would impact Danny's equitable interest in the El Rosado Group companies[43]; Count III seeks an accounting of the Inheritance Stock[44]; and Count IV claims fraud and abuse in violation of Article 17 in connection with steps taken to restructure the El Rosado Group companies.[45] Count II, against the LLC Defendants only, seeks to hold the Inheritance Stock in constructive trust.[46]

The Complaint sets forth three counts against Johny alone: Count V asserts breach of fiduciary duty related to Johny's actions dealing with the Inheritance Stock and Jointly Owned Assets[47]; Count VI asserts common law fraud, conversion and wrongful possession related to the Inheritance Stock[48]; and Count VII asserts civil conspiracy for entering into the Settlement Agreement with Vivian as a means to exercise unlawful dominion and control over the Jointly Owned Assets, including the Inheritance Stock.[49]

---

[43] Compl. ¶¶ 146–56.

[44] Compl. ¶¶ 168–80.

[45] Compl. ¶¶ 181–90.

[46] Compl. ¶¶ 157–67.

[47] Compl. ¶¶ 191–96.

[48] Compl. ¶¶ 197–206.

[49] Compl. ¶¶ 207–16.

Finally, the Complaint sets forth four counts against Vivian: Count VIII seeks injunctive relief to prevent consummation of the Settlement Agreement[50]; Count IX seeks an accounting regarding the Settlement Agreement[51]; Count X asserts breach of fiduciary duty for entering into the Settlement Agreement[52]; and Count XI, the corollary to Count VII, asserts civil conspiracy for entering into the Settlement Agreement with Johny as a means to exercise unlawful dominion and control over the Jointly Owned Assets, including the Inheritance Stock.[53]

Johny and the LLC Defendants have moved to dismiss the Complaint for lack of subject matter jurisdiction, forum *non conveniens*, failure to state a claim and failure to join an indispensable party.[54] Johny further moves to dismiss the Complaint for lack of personal jurisdiction, insufficient process and insufficient service of process.[55] Vivian moved to dismiss the Complaint for failure to state a

---

[50] Compl. ¶¶ 217–20.

[51] Compl. ¶¶ 221–31.

[52] Compl. ¶¶ 232–36.

[53] Compl. ¶¶ 237–246.

[54] Dkt. 236; Dkt. 245.

[55] *Id.*

12

claim, but withdrew her motion and instead partially joined the Opening Brief submitted on behalf of Johny and the LLC Defendants.[56]

For reasons discussed below, I conclude the Complaint must be dismissed for lack of subject matter jurisdiction and personal jurisdiction. Further, even if the Court could exercise subject matter jurisdiction over Danny's claims and personal jurisdiction over Johny, Danny's claims are barred by laches. Accordingly, I need not and decline to reach Defendants' arguments as to forum *non conveniens*, failure to state a claim and failure to join an indispensable party.

## II. LEGAL ANALYSIS

The Court may not adjudicate a matter over which it lacks subject matter jurisdiction.[57] Likewise, "[a] Court that lacks jurisdiction over a defendant is without power to consider a complaint on the merits."[58] Thus, jurisdictional challenges, both subject matter and personal, present threshold inquiries. On a

---

[56] Dkt. 235; Dkt. 247; Dkt. 249. It is unclear whether Vivian has withdrawn her motion to dismiss entirely or only to a limited extent. Vivian's notice of withdrawal specified withdrawal of her motion to dismiss but makes no mention of withdrawing her partial joinder. Dkt. 249. My analysis proceeds as if Vivian has withdrawn her motion to dismiss entirely.

[57] Ct. Ch. R. 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the Court lacks jurisdiction of the subject matter, the Court shall dismiss the action.").

[58] *Lisa, S.A. v. Mayorga*, 2009 WL 1846308, at *5 (Del. Ch. June 22, 2009) (citing *Branson v. Exide Elecs. Corp.*, 624 A.2d 267, 269 (Del. 1993)), *aff'd,* 993 A.2d 1042 (Del. 2010).

motion to dismiss for want of jurisdiction, the plaintiff bears the burden to make out a *prima facie* case establishing jurisdiction.[59]   A *prima facie* case requires the "production of enough evidence to allow the fact-trier to infer the fact at issue and rule in the party's favor."[60]  Danny has failed to carry this burden.  Even if he had carried his jurisdictional burdens, however, it is clear from the face of his Complaint that his claims are stale and barred by laches.  My reasoning follows.

## A. Subject Matter Jurisdiction Over Claims Against Johny and the LLC Defendants

This Court has subject matter jurisdiction when "(1) one or more of the plaintiff['s] claims for relief is equitable in character, (2) the plaintiff requests relief that is equitable in nature, or (3) subject matter jurisdiction is conferred by statute."[61] "Whenever it appears by suggestion of the parties or otherwise that the Court lacks jurisdiction of the subject matter, the Court shall dismiss the action."[62]  Danny alleges the Court has jurisdiction over this dispute pursuant to 10 *Del. C.* § 341,

---

[59] *Medi-Tec of Egypt Corp. v. Bausch & Lomb Surgical*, 2004 WL 415251, at *2 (Del. Ch. Mar. 4, 2004).  *See also Crescent/Mach I*, 846 A.2d at 974; *Shore Inv., Inc. v. BHole, Inc.*, 2009 WL 2217744, at *2 (Del. Ch. July 14, 2009) ("The party seeking the Court's intervention bears the burden of establishing jurisdiction.").

[60] Prima facie *case*, *Black's Law Dictionary* (10th ed. 2014).

[61] *Candlewood Timber Gp., LLC v. Pan Am. Energy, LLC*, 859 A.2d 989, 997 (Del. 2004).

[62] Ct. Ch. R. 12(h)(3).

which provides that the Court of Chancery "shall have jurisdiction to hear and determine all matters and causes in equity."[63]

In *de Adler*, Vivian invoked this same basis for jurisdiction, based on the same pled facts in response to the same subject matter jurisdiction defense raised by defendants (including Johny *and Danny*).[64] There, the Court determined it had equitable jurisdiction over Vivian's claims of direct ownership of El Rosado Group stock, but did not have jurisdiction over claims that she obtained El Rosado Group stock by inheritance.[65] Specifically, the Court found that it did not have "equitable jurisdiction to inventory the estate of a non-domiciliary [(Alfredo)] with no Delaware assets where the Court does not already have jurisdiction."[66] Because a proper inventory and distribution were predicates to determining whether Vivian's

---

[63] Compl. ¶ 15.

[64] 2013 WL 5874645, at *5. As noted, Danny admits the Complaint "arises out of the facts and subject matter . . . which was originally filed by Vivian." Compl. ¶ 19. *See also id.* ¶ 151 ("In a Memorandum Opinion dated October 31, 2013, this Court held that Vivian's allegations against Johny—which are substantially similar to the allegations made by Danny against Johny in support of his claims—stated a claim for fraud and abuse under Article 17 of the Corporate Act of Ecuador.").

[65] *de Adler*, 2013 WL 5874645, at *11.

[66] *Id.* at *11 n.131.

15

inheritance included the Inheritance Stock, the Court concluded that it lacked jurisdiction to adjudicate that claim.[67]

After *de Adler*, an Ecuadorian tribunal finalized the inventory of the Estate, which was found to include only small holdings of Group stock, and thereafter ordered distribution of the Estate. The fact that an Ecuadorian tribunal has now inventoried and ordered the distribution of the Estate does not change that, "[a]s a matter of comity, this Court is without jurisdiction" to determine the threshold question whether the Estate included El Rosado Group stock allegedly removed to the BVI entities and ultimately held in the LLC Defendants.[68] Rather, if anything, the fact that an Ecuadorian tribunal has now determined that the Inheritance Stock is not an asset of the Estate makes this Court's exercise of subject matter jurisdiction over Danny's claims even less tenable. Danny's claims rest on the premise that Johny and Vivian seek to misappropriate Inheritance Stock from the Estate. Yet the factual predicate of that claim—that the Estate ever held the Inheritance Stock—has been adjudicated in Ecuador to be without merit.

---

[67] *Id.*

[68] *Id.* at *11.

Under the doctrine of law of the case, the Court cannot revisit its ruling in *de Adler* that it lacks subject matter jurisdiction to conduct another inventory,[69] and it cannot and will not disturb the results of the inventory performed by the Ecuadorian court out of fundamental notions of comity.[70]  Consequently, the Court lacks subject matter jurisdiction over Danny's claims to the Inheritance Stock as a stockholder by inheritance.  This finding extends to each of the counts asserted in the Complaint—injunctive relief, fraud, constructive trust, accounting, fraud and abuse in violation of Article 17, breach of fiduciary duty, common law fraud, conversion and wrongful possession and civil conspiracy—because the factual

---

[69] *Gannett Co., Inc. v. Kanaga*, 750 A.2d 1174, 1181 (Del. 2000) (observing "[t]he law of the case doctrine requires that there must be some closure to matters already decided . . . [and] like the *stare decisis* doctrine, is founded on the principle of stability and respect for our court processes and precedent"); *Kenton v. Kenton*, 571 A.2d 778, 784 (Del. 1990) ("The 'law of the case' is established when a specific legal principle is applied to an issue presented by facts which remain constant throughout the subsequent course of the same litigation.").

[70] The Complaint, while completely ignoring the Ecuadorian estate proceedings, alleges "[i]n Israel, the scope of Alfredo's and Ruth's worldwide estates have not yet been determined."  Compl. ¶ 124.  Thus, a determination in this Court that it has subject matter jurisdiction over the Estate and related disputes would not only overturn rulings in the Ecuadorian proceedings, but would also encroach upon Israel's authority to determine the scope of the Estate.  *See* ¶¶ 8, 44, 64, 111 (referring to Israeli proceedings and, in some instances, asking the Court to make determinations regarding the distribution of the Estate based on findings of the Israeli court).

predicate underlying each count is the allegation that Danny has been deprived of his rightful inheritance.[71]

Danny contends that his Complaint, like Vivian's, also asserts claims based on his direct ownership of El Rosado Group stock. As I must, I draw all reasonable inferences in favor of Danny.[72] The 58-page, 246-paragraph Complaint, while replete with allegations premised on Danny's stock ownership by inheritance,

---

[71] Count I seeks an injunction to prevent the LLC Defendants from transferring Inheritance Stock without Danny's prior written consent to protect his "equitable interest in the El Rosado Group companies." *Id*. ¶ 153. Count II seeks a constructive trust and asserts the LLC Defendants are "holding Danny's share of Alfredo's and Ruth's worldwide estates in trust for Danny." *Id*. ¶ 164. Count III seeks an accounting and asserts Johny is conspiring "to divide or distribute Jointly Owned Assets with Vivian without Danny's consent or consideration of his interest in the Jointly Owned Assets." *Id*. ¶ 178. Count IV alleges fraud and abuse in violation of Article 17 and asserts Johny "has converted Danny's property for himself and to [the LLC Defendants]." *Id*. ¶ 185. Count V asserts "Johny breached his fiduciary duties to Danny by (a) converting Jointly Owned Assets, including the El Rosado Group stock held by [the LLC Defendants] for his own benefit . . ." *Id*. ¶ 195. Count VI alleges common law fraud, conversion and wrongful possession and asserts Danny is entitled to relief "because of Johny's fraud, conversion, and wrongful possession of portions of Alfredo's and Ruth's estates." *Id*. ¶ 198. Count VII alleges civil conspiracy and asserts Johny and Vivian are "depriv[ing] Danny of his undivided one-third interest in the Jointly Owned Assets." *Id*. ¶ 215. Count VIII seeks injunctive relief preventing consummation of the Settlement Agreement until Vivian and Johny can demonstrate "that no portion of the assets of Alfredo's and Ruth's estates that rightfully belong to Danny" is being used by Johny to settle with Vivian. *Id*. ¶ 218. Count IX seeks accounting and asserts Vivian is "conspiring to divide or distribute Jointly Owned Assets with Johny without Danny's consent or consideration of his interest in the Jointly held assets." *Id*. ¶ 229. Count X asserts Vivian breached her fiduciary duties to Danny by entering into the Settlement Agreement "without consideration of his one-third interest in the Jointly Owned Assets." *Id*. ¶ 235. Count XI alleges civil conspiracy and asserts the same as Count VII. *Id*. ¶ 245.

[72] *Gen. Motors (Hughes)*, 897 A.2d at 168.

18

contains just two cursory references to Danny's direct holdings of El Rosado Group Stock.[73] Nevertheless, because these two cursory references exist, I find that Danny has established a *prima facie* case for jurisdictional purposes that he has asserted claims based on his direct holdings of El Rosado Group. Therefore, in keeping with the law of the case established by *de Adler*, this Court could exercise subject matter jurisdiction over Danny's claims based upon his direct ownership of El Rosado Group stock. But, as explained below, these claims fail at the threshold for other dispositive reasons.

## B. Subject Matter Jurisdiction Over Claims Against Vivian

Although Vivian has withdrawn her motion to dismiss, this Court is obligated to assess *sua sponte* subject matter jurisdiction over Danny's claims against Vivian.[74] The Court's lack of subject matter jurisdiction over Danny's claims based on stock ownership by inheritance bars Danny's claims against Vivian. As stated, Danny's claims against Vivian all arise from the Settlement Agreement, which Danny claims is an unlawful attempt to divide and distribute Jointly Owned Assets, including the Inheritance Stock. In order for this Court to adjudicate any of the four

---

[73] Compl. ¶ 31 ("Combining direct and indirect holdings, Danny owned a stake in each of the El Rosado Group companies . . ."); *id*. ¶ 111 (". . . award relief to Danny not only on the basis of his personal share of El Rosado Group but also on the basis of his entitlement to an undivided interest on all of Alfredo's and Ruth's estates").

[74] Ct. Ch. R. 12(h)(3).

counts that Danny has brought against Vivian, it must revisit findings made by courts in other jurisdictions regarding the Estate's assets to determine whether Jointly Owned Assets, including the Inheritance Stock, are included in the Estate. As explained above, these issues are beyond the reach of this Court's subject matter jurisdiction.[75] Moreover, for the Court to adjudicate Danny's claims against Vivian, the Court would be required to determine whether the Settlement Agreement should be nullified, a determination that would necessitate an inquiry into whether Johny wrongfully removed the Inheritance Stock. This would bring the Court full circle back to determinations already made by courts in Israel and Ecuador. Accordingly, because the adjudication of these claims would require the Court to decide predicate factual and legal questions in a manner that conflicts with rulings from tribunals (with jurisdiction) that have already ruled on those matters, counts VIII–XI must be dismissed.

---

[75] Count VIII seeks injunctive relief against Vivian to prevent consummation of the Settlement Agreement "until Vivian and Johny can account for and demonstrate (a) that no portion of the assets of Alfredo's and Ruth's estates that rightfully belong to Danny . . . is being used by Johny to settle with Vivian." Compl. ¶ 218. Count IX seeks an accounting against Vivian and alleges that she and Johny have failed "to provide assurances that [the Settlement A]greement does not involve the distribution or division of Jointly Owned Assets." *Id*. ¶ 228. Count X alleges Vivian breached her fiduciary duties "to Danny by entering into an [sic] Settlement Agreement which divided Jointly Owned Assets between her and Johny . . . without consideration of his one-third interest in the Jointly Owned Assets." *Id*. ¶ 235. Count XI alleges civil conspiracy and asserts "Johny and Vivian have entered into the Settlement Agreement to unlawfully exercise dominion and control over the Jointly Owned Assets." *Id*. ¶ 243.

## C. Personal Jurisdiction Over Johny

As with subject matter jurisdiction, Danny "bears the burden of showing a basis for the court's exercise of jurisdiction over [Johny]."[76] Prior to jurisdictional discovery, "[Danny] need only make a *prima facie* showing of jurisdiction in order to survive a motion to dismiss."[77] "Once jurisdictional discovery has been completed, however, [Danny] must allege specific facts supporting [his] position" that the Court has jurisdiction over Johny.[78] Here, the parties apparently commenced, but did not complete, jurisdictional discovery.[79] Accordingly, I give Danny the benefit of the doubt and hold him to the lower burden of establishing a *prima facie* case for this Court's exercise of jurisdiction over Johny. Even under this less onerous standard, the Complaint fails to pass muster.

In the case of a nonresident defendant, Delaware courts apply a two-step personal jurisdiction analysis.[80] First, the Court assesses whether there is a statutory

---

[76] *Ryan v. Gifford*, 935 A.2d 258, 265 (Del. Ch. 2007). *See also Greenly v. Davis*, 486 A.2d 669, 670 (Del. 1984) ("The burden was upon the plaintiff to make a specific showing that the Delaware court has jurisdiction under the long-arm statute.").

[77] *Medi-Tec of Egypt Corp.*, 2004 WL 415251, at *2.

[78] *Id.* (internal quotations omitted).

[79] *See* Dkt. 139; Dkt. 145; Dkt. 146; Dkt. 153; Dkt. 161; Dkt. 166; Dkt. 171; Dkt. 172; Dkt. 177. While in the midst of litigating the scope of jurisdictional discovery, the parties stipulated to a stay pending mediation efforts. Dkt. 183.

[80] *Hercules Inc. v. Leu Trust & Banking (Bahamas) Ltd.*, 611 A.2d 476, 480 (Del. 1992).

basis for personal jurisdiction.[81]  Second, the Court determines whether exercising

personal jurisdiction over the nonresident defendant is consistent with the Due

Process Clause of the Fourteenth Amendment to the United States Constitution.[82]

Danny asserts this Court has personal jurisdiction over Johny pursuant to 10 *Del C.*

§ 3104 and 6 *Del. C.* § 18-109.  I disagree.  My analysis follows.

### 1.  10 *Del C.* § 3104

Delaware's long-arm statute, 10 *Del C.* § 3104, contemplates that any

nonresident who commits certain acts or causes certain injuries in Delaware is

subject to Delaware's jurisdiction.  The long-arm statute states, in relevant part:

> (c) . . . a [Delaware] court may exercise personal jurisdiction over any
> nonresident . . . who in person or through an agent:
>
> > (1)  Transacts any business or performs any character of work
> > or service in [Delaware]; . . .

In support of his claim that the Court may exercise personal jurisdiction over Johny,

Danny alleges that Johny "formed his Delaware LLCs in Delaware in furtherance of

a fraudulent scheme and the formation of Johny's Delaware LLCs is an integral part

of the actions giving rise to Danny's claims."[83]  While the Complaint does not

---

[81] *Lisa*, 2009 WL 1846308, at *5.

[82] *Hercules*, 611 A.2d at 481.

[83] Compl. ¶ 17.

22

specify the subsection of Section 3104 on which Danny relies,[84] Danny addressed this gap in his opposition brief by expressly identifying Section 3104(c)(1) as his jurisdictional hook as to Johny.[85] Thus, I focus my analysis on Section 3104(c)(1).

Section 3104(c)(1) is a "single act" statute.[86] Accordingly, I must analyze whether the Complaint alleges that Johny did anything in Delaware that would constitute transacting business under Section 3104(c)(1), and one single act of transacting business will suffice.[87] But the nonresident defendant's act of transacting business in Delaware must have a nexus to the claim(s) against that nonresident defendant.[88] Stated differently, the act(s) of transacting business in Delaware must

---

[84] Compl. ¶ 17.

[85] Danny David Czarninski Baier's Opp'n to Mot. to Dismiss ("Pl.'s Answering Br.") 18–21.

[86] *Eudaily v. Harmon*, 420 A.2d 1175, 1180 (Del. 1980) (concluding that "Section 3104 is not a consent statute . . . but is a 'single act' statute"). A consent statute provides that "when a nonresident accepts a [certain] position [in a Delaware entity], that nonresident consents that service upon his statutory agent will amount to *in personam* jurisdiction over him for any claims covered by the statute." *Assist Stock Mgmt. L.L.C. v. Rosheim*, 753 A.2d 974, 982 (Del. Ch. 2000). By contrast, "[a] 'single act' statute is a type of long-arm statute establishing jurisdiction over nonresidents on the basis of a single act done or transaction engaged in by the nonresident within the state." *Eudaily*, 420 A.2d at 1180 n.4.

[87] *See Crescent/Mach I*, 846 A.2d at 975.

[88] *Conn. Gen. Life Ins. Co. v. Pinkas*, 2011 WL 5222796, at *1 (Del. Ch. Oct. 28, 2011). *See also Metro. Life Ins. Co. v. Tremont Gp. Hldgs., Inc.*, 2012 WL 6632681, at *5 (Del. Ch. Dec. 20, 2012) ("requir[ing] that the defendant's transaction of business in Delaware be related to the wrongs alleged in the complaint").

be "an integral component of the total transaction to which [Danny's] cause of action relates."[89]

The Complaint's sole allegation that Johny transacted business in Delaware is that, in 2008, Johny domesticated three BVI entities (that were allegedly holding the Inheritance Stock) in Delaware, by forming the LLC Defendants.[90]  But mere formation of a Delaware entity, without more, is insufficient for this Court to exercise jurisdiction.[91]  Rather, the act of formation must be "an integral component of the total transaction to which [Danny's] cause of action relates."[92]  This is where Danny's theory of personal jurisdiction over Johny falls short.

The domestication of the BVI entities into the LLC Defendants in 2008 cannot be integral to Johny's alleged fraudulent scheme because "the [ ] scheme was complete . . . no later than when the stock in El Rosado Group was transferred to the BVI [entities] in 2006 and 2007, with the last transaction in October 2007."[93]  Entities that did not exist at the commencement or conclusion of an alleged

---

[89] *Pinkas*, 2011 WL 5222796, at *2.

[90] Compl. ¶¶ 102–05.

[91] *Conn. Gen.*, 2011 WL 5222796, at *2.

[92] *Id.*

[93] *de Adler*, 2013 WL 5874645, at *14.

24

fraudulent scheme could not have been employed in furtherance of, much less have been integral to, the fraud. Moreover, Danny concedes that the LLC Defendants "have no offices, no employees, and conduct no business."[94] Thus, he concedes that Johny has not transacted business in Delaware through the LLC Defendants since October 2007. Given that the formation of the LLC Defendants could not have been integral to the alleged wrongs that animate Danny's claims (whether based on direct ownership or ownership by inheritance), Danny cannot make a *prima facie* case for the Court's exercise of jurisdiction over Johny under Section 3104(c)(1).

### 2. 6 *Del. C.* § 18-109

Nor can the Court exercise personal jurisdiction over Johny under 6 *Del. C.* § 18-109. Section 18-109 is Delaware's implied consent statute for obtaining personal jurisdiction over nonresident managers of Delaware limited liability companies.[95] Section 18-109 states, in relevant part: "A manager . . . of a limited liability company may be served with process . . . in all civil actions or proceedings brought in the State of Delaware involving or relating to the business of the limited liability company or a violation by the manager . . . of a duty to the limited liability

---

[94] Compl. ¶ 106.

[95] *Assist Stock Mgmt.*, 753 A.2d at 975. Defendants do not appear to dispute that Johny is the manager of the LLC Defendants. *See* Opening Br. 30–33.

company."[96]  To justify the exercise of personal jurisdiction over a nonresident as LLC manager pursuant to Section 18-109, the Court must find that: (1) the claims at issue focus on the manager's "rights, duties, and obligations"; (2) the resolution of the matter is "inextricably bound up in Delaware law"; and (3) Delaware has a strong interest in providing a forum for the resolution of the type of dispute at issue.[97]  None of the three requirements for personal jurisdiction under Section 18-109 is satisfied here.

*First*, the claims at issue do not focus on Johny's rights, duties and obligations as manager of the LLC Defendants.  Rather, the claims all arise from Johny's alleged wrongful removal of El Rosado Group stock to the BVI entities.  That Johny now allegedly holds the Inheritance Stock in the LLC Defendants does not change the undisputed fact that the alleged fraud was completed outside of Delaware.  As stated, the Court already has determined the fraud, if any, was complete with the final transfer of stock out of Ecuador and into the BVI entities in October 2007.[98]  And, as stated, the alleged fraudulent scheme was commenced and completed prior to the existence of the LLC Defendants.  It is inconceivable how Johny's alleged wrongdoing, which occurred prior to the formation of the LLC Defendants, arose

---

[96] 6 *Del. C.* § 18-109(a).

[97] *Assist Stock Mgmt.*, 753 A.2d at 981.

[98] *de Adler*, 2013 WL 5874645, at *14.

26

out of his rights, duties and obligations as manager of limited liability companies that were not yet in existence when the wrongdoing occurred. Moreover, the Complaint acknowledges that the LLC Defendants "have no offices, no employees, and conduct no business."[99] Thus the claims at issue cannot possibly focus on Johny's rights, duties and obligations as manager of the LLC Defendants where, by Danny's own admission, there is nothing for Johny to do (or not do) as relates to these entities.

*Second*, the resolution of this matter is not inextricably linked to Delaware law. On the contrary, the alleged fraud commenced in Ecuador, from which the Inheritance Stock allegedly was wrongfully removed, and was completed in the BVI. Whether the assets were wrongfully removed depends on whether the assets were ever part of the siblings' parents' estate, which is a matter of Israeli or Ecuadorian law, not Delaware law.

*Third*, accepted principles of comity dictate that Delaware *not* offer a forum to resolve this type of dispute over foreign assets in foreign estates governed by foreign law, particularly when foreign courts have already made substantive rulings relating to the controversy.[100]

---

[99] Compl. ¶ 106.

[100] *Diedenhofen-Lennartz v. Diedenhofen*, 931 A.2d 439, 451 (Del. Ch. 2007) ("Delaware has a[n] important interest in affording comity to the courts of other jurisdictions when a dispute arises under foreign [] law.").

Danny has not established a *prima facie* case for the Court's exercise of personal jurisdiction over Johny under Section 18-109 in order for this Court to adjudicate Danny's claims against Johny or the LLC Defendants, whether based on ownership by inheritance or direct ownership of Group stock. Having found no statutory basis under either Section 3104(c)(1) or Section 18-109 to assert personal jurisdiction over Johny, I need not reach the Due Process inquiry. Accordingly, Counts I–VII against Johny (and the LLC Defendants) must be dismissed.[101]

**D. Laches**

In order successfully to defend on laches, Defendants must demonstrate that (1) Danny had knowledge of the invasion of his rights, (2) Danny unreasonably delayed in bringing suit to vindicate those rights, and (3) the delay resulted in injury or prejudice to Defendants.[102] Whether the three elements for a laches defense exist

---

[101] Having found the Court lacks personal jurisdiction over Johny, the case cannot proceed against Vivian even if the Court had subject matter jurisdiction over Danny's claims because Johny is, under any view of Danny's claims, an indispensable party whose presence in the litigation would be required to protect his own interests and for Vivian to have a fair opportunity to present a defense. *See Sergerson v. Delaware Trust Co.*, 1979 WL 174436, at *3 (Del. Ch. Oct. 5, 1979) (granting motion to dismiss complaint after determining the Court lacked personal jurisdiction over a named party who was an indispensable party).

[102] *Homestore, Inc. v. Tafeen*, 888 A.2d 204, 210 (Del. 2005). *See also Whittington v. Dragon Gp. L.L.C.*, 2010 WL 692584, at *5 (Del. Ch. Feb. 15, 2010).

28

is a fact-based inquiry generally not suited for pleading-stage motion practice.[103]

With that said, in an appropriate case, this Court can dismiss a case on the pleadings based on laches.[104] This is such a case. Danny brings claims before the Court that he admits "arise out of the facts and subject matter" that formed the basis of nearly identical claims that, Vivian, now a co-defendant, brought against Danny and Johny five years prior to Danny's complaint.[105] Under these circumstances, the elements of laches fall neatly into place.

As to the first prong, Defendants must show that Danny was on inquiry notice, at least, of his claim. "Inquiry notice exists when the plaintiff learns of 'facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery [of injury].'"[106] Defendants easily meet this

---

[103] *Homestore*, 888 A.2d at 210.

[104] *See e.g.*, *CMS Inv. Hldgs, LLC v. Castle*, 2016 WL 4411328 (Del. Ch. Aug. 19, 2016) (granting motion to dismiss where relevant three-year statute of limitations applied and plaintiffs "failed to identify a tolling doctrine or extraordinary circumstances that suffice to avoid application of laches"); *In re Sirius XM S'holder Litig.*, 2013 WL 5411268 (Del. Ch. Sept. 27, 2013) (granting motion to dismiss where plaintiffs sought to challenge contract provisions that were publicly disclosed more than three years earlier); *In re Coca-Cola Enters., Inc.*, 2007 WL 3122370 (Del. Ch. Oct. 17, 2007) (granting motion to dismiss "[b]ecause plaintiffs have alleged facts that show they either were or should have been aware of these claims for far more than three years before filing this action").

[105] Compl. ¶ 19.

[106] *Whittington*, 2010 WL 692584, at *5 (citing *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 319 (Del. 2004)).

requirement because, as stated, Vivian filed the same claims against Johny *and Danny* in August 2011. Therefore, Danny had inquiry notice of Johny's alleged wrongdoing that forms the bases of his Complaint as early as August 2011.

When determining whether Danny unreasonably delayed in bringing his claim, the Court must ask whether [Danny] has exercised "that degree of diligence which the situation . . . in fairness and justice require[s]."[107] The answer to this question is a resounding "no." Danny brought his claims five years after he was first put on inquiry notice of the alleged wrongdoing. He sat on his rights while Vivian's complaint was litigated for several years—a complaint that Danny actively resisted. It was not until Vivian and Johny appeared to be reaching a settlement agreement in late 2016, five years after Danny was clearly on inquiry notice of Johny's alleged wrongdoing, that Danny decided it was time to launch his own claims against his siblings. Such delay cannot be justified on any reasonably conceivable set of facts.

Moreover, "a filing after the expiration of the analogous limitations period is presumptively an unreasonable delay for purposes of laches."[108] In *de Adler*, the Court found that the presumptive statute of limitations period for Vivian's claims

---

[107] *Scotton v. Wright*, 117 A. 131, 136 (Del. Ch. 1922), *aff'd sub nom. Wright v. Scotton*, 121 A. 69 (Del. 1923).

[108] *Levey v. Brownstone Asset Mgmt., LP*, 76 A.3d 764, 769 (Del. 2013).

was three years.[109]  Danny admits that his allegations against Johny are "substantially

similar" to Vivian's allegations against Johny.[110]  Therefore, I am satisfied that the

three-year statute of limitations applies as well to Danny's claims against Johny.[111]

Danny filed his counterclaim and cross-claims to Vivian's complaint in October

2016,[112] well beyond the expiration of the three-year statute of limitations, which

began to run at the latest in August 2011.[113]  Danny has unreasonably delayed in

bringing his claims.[114]

---

[109] 2013 WL 5874645, at *13.

[110] Compl. ¶ 151.

[111] As stated, Danny's claims against Vivian are predicated on the fraudulent scheme and its effect on his rightful inheritance under the Estate.  Therefore, if Danny's claims against Johny are barred by laches, the Court cannot reach the factual inquiries necessary to adjudicate Danny's claims against Vivian either.

[112] Danny's counterclaims and cross-claims to Vivian's complaint were filed as the Complaint in August 2017 after the Court ordered realignment of the parties in this action following a notice of dismissal of Vivian's complaint.  Dkt. 199; Dkt. 233 at 2.

[113] Danny's argument that the statute of limitations should be tolled is flawed because "[e]ven the most persuasive allegations of tolling can only delay the limitations period until the party asserting the claim was on inquiry notice."  *de Adler*, 2013 WL 5874645, at *15 (citing *Albert v. Alex. Brown Mgmt. Servs., Inc.*, 2005 WL 1594085, at *19 (Del. Ch. June 29, 2005) ("The statute of limitations then begins to run upon the discovery of facts constituting the basis of the cause of action or the existence of facts sufficient to put a person on inquiry notice of such facts.")); Answering Br. 45–47.  Here, Vivian's complaint in August 2011 put Danny on inquiry notice; therefore, tolling is inapplicable.

[114] Danny's argument that "[b]ecause [his] claims arise out of the same conduct, transactions, and occurrences alleged in Vivian's complaint, Danny's crossclaims and counterclaims relate back to Vivian's filing day of September 28, 2011" is unpersuasive. Pl.'s Answering Br. at 44.  As stated, and as acknowledged by Danny, his claims against Johny are cross-claims.  *Id.*; Dkt. 194.  "Courts have unequivocally held that a cross-claim

Finally, I must determine whether Danny's delay in bringing his claims has resulted in injury or prejudice to Defendants. "After the statute of limitations has run, defendants are entitled to repose and are exposed to prejudice as a matter of law by a suit by a late-filing plaintiff who had a fair opportunity to file within the limitations period."[115] As stated, such is the case here, and prejudice to defendants is thus presumed. Accordingly, even if this Court could exercise subject matter jurisdiction over Danny's claims against Johny and Vivian (which it cannot), and personal jurisdiction over Johny (which it cannot), Danny's claims against all defendants are barred by laches. The Complaint, therefore, must be dismissed.

### III. CONCLUSION

For the foregoing reasons, the motion to dismiss is **GRANTED**.

**IT IS SO ORDERED.**

---

requesting affirmative relief . . . *does not* relate back to the original complaint." *In re Delta & Pine Land Co. S'holders Litig.*, 2000 WL 1010584, at *4 (Del. Ch. July 17, 2000) (emphasis in original).

[115] *In re Sirius XM*, 2013 WL 5411268, at *4. *See also Kraft v. WisdomTree Invs., Inc.*, 145 A.3d 969, 979 (Del. Ch. 2016) ("The Court may also presume prejudice if the claim is brought after the analogous limitations period has expired.").